**DAVIS v. UNITED STATES.**

No. 43413.

Court of Claims.

April 3, 1939.

Haynes, both of Washington, D. C., on the brief), for plaintiff.

Samuel E. Blackham, of Washington, D. C., and James W. Morris, Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

LITTLETON, Judge.

The questions presented are (1) Whether the stock of the Underwood Company which plaintiff received in 1929 as a result of the transfer by the Neidich Company of New Jersey of its property and assets to the New Neidich Company of Delaware was stock of a corporation a party to a reorganization on which no gain or loss should be recognized under the provisions

Thomas G. Haight, of Jersey City, N. J. (Robert H. Montgomery and J. Marvin

of section 112 of the Revenue Act of 1928 [1]—that is, whether the Underwood

---

[1] "Recognition of Gain or Loss.

"(a) *General Rule.*—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

"(b) *Exchanges Solely in Kind.*—* * *

"(3) *Stock for stock on reorganization.* —No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

"(4) *Same—Gain of corporation.*—No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

\* \* \* \* \*

"(g) *Distribution of Stock on Reorganization.*—If there is distributed, in pursuance of a plan of reorganization, to a shareholder in a corporation a party to the reorganization, stock or securities in such corporation or in another corporation a party to the reorganization, without the surrender by such shareholder of stock or securities in such a corporation, no gain to the distributee from the receipt of such stock or securities shall be recognized.

\* \* \* \* \* \*

"(i) *Definition of Reorganization.*—As

used in this section and sections 113 and 115—

"(1) The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.

"(2) The term 'a party to a reorganization' includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation.

"(j) *Definition of Control.*—As used in this section, the term 'control' means the ownership of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation." 26 U.S.C.A. §§ 112(a), (b) (3, 4), (h), 112 note.

Company was a party to a reorganization; and (2) If the Underwood Company was a party to a reorganization, whether, at the time of the reorganization, the plaintiff was a shareholder in the old New Jersey Company.

Plaintiff contends that although the contract of January 3, 1929, between the old New Jersey company and the Underwood Company contemplated that the Underwood Company would, for convenience, form a new wholly-owned corporation to take title to the assets of the New Jersey corporation, the substance of the transaction was the acquisition of these assets by the Underwood Company; that the Underwood Company was therefore a "party to a reorganization" within the meaning of section 112 (i) (2) of the statute and the stock of the Underwood Company received by him was stock in a corporation a party to a reorganization within the meaning of section 112 (g). It is argued by plaintiff that Congress did not intend to make a distinction between a case where the stock of one corporation is received in exchange for the stock of another when the assets of the latter have been acquired directly by the former in consideration of such exchange of stock and a case like the one at bar where the stock is received in a transaction identically the same, except for the fact that the corporation, the taxability of whose stock is involved, takes the assets through a wholly-owned subsidiary.

■ We are of opinion from the facts presented and upon the decided cases that the Underwood Company, the stock of which plaintiff received, was not a party to a reorganization within the meaning of the statute and that such stock is not to be excluded under section 112 (g) in the determination of plaintiff's tax for 1929. It is agreed that, if this interpretation of the statute is correct, the additional tax and interest determined and collected by the Commissioner were due and that plaintiff is not entitled to recover.

What actually occurred was that under the contract of January 3, 1929, between the Neidich Company of New Jersey and the Underwood Company the latter agreed to cause a new corporation to be organized under the laws of Delaware. The Underwood Company was to own all the issued and outstanding capital stock of the new company. The old Neidich Company of New Jersey agreed to sell to the new company of Delaware and the Underwood Com-

pany agreed that the new Delaware company would purchase all the property and assets of the old New Jersey company in payment for which the Underwood Company agreed that it and the new Delaware Company would cause to be delivered to the old New Jersey company 21,005 shares of the stock of the Underwood Company and that the new Delaware Company would assume the liabilities of the old New Jersey company with certain minor exceptions. This transaction was carried out strictly in accordance with the contract. The Underwood Company organized the new Delaware Company, taking all of its issued stock. The old New Jersey Company by a bill of sale and deed transferred all of its property and assets to the new Delaware Company and received from the Underwood Company the 21,005 shares of its common stock which the old New Jersey Company distributed to its then sole stockholder— Samuel A. Neidich, and Neidich, pursuant to his contracts with the former shareholders of the old New Jersey Company distributed to them, in the proportions agreed upon, certain stock of the Underwood Company.

■ This was the substance of the transactions and we are of opinion that certain book entries by the Underwood Company and the new Delaware Company tending to reflect a transfer from the old New Jersey Company to the Underwood Company and then from the Underwood Company to the new Delaware Company are, in view of the facts as to what actually occurred, of no controlling importance. Stripped of the unessential formalities, the essence of the transaction was the issuance by the Underwood Company of 21,005 shares of its own stock for 4,190 shares of stock of the new Delaware Corporation and the delivery of 21,005 shares of stock of the Underwood Company to the old New Jersey corporation in exchange for the acquisition by the new Delaware corporation of the assets and property of the old company. In the accomplishment of the completed transaction, the delivery by the Underwood Company of its stock direct to the old New Jersey Company was, in legal contemplation, the same as the issuance by the Underwood Company of its stock to the new Delaware Corporation in exchange for all the stock of the Delaware Corporation and the delivery by the Delaware Corporation of the stock of the Underwood Company to the old New Jersey Company.

The cases of Groman v. Commissioner of Internal Revenue, 302 U.S. 82, 58 S.Ct. 108, 82 L.Ed. 63, and Helvering v. Bashford, 302 U.S. 454, 58 S.Ct. 307, 82 L.Ed. 367, require these conclusions.

In the Groman case it appeared that the plaintiff and all other stockholders of Metals Refining Company, an Indiana corporation, entered into a contract with the Glidden Company, an Ohio Corporation, reciting that the shareholders of Indiana were desirous of merging and consolidating the properties of their company with the Glidden Company and with a new corporation that Glidden was to organize under the laws of Ohio. The shareholders of the Metals Company agreed that they would assign their shares to the new Ohio corporation which was to have a specified capital structure divided into preferred and common shares, and the Glidden Company agreed that it would issue and deliver, or cause to be issued and delivered, to the shareholders of the Metals Company a stated number of shares of the Glidden Company's own prior preference stock at an agreed valuation, a stated number of shares of the preferred stock of the new Ohio Company, also at an agreed valuation, and sufficient cash to equal the appraised value of the Metals Refining Company's assets as of March 1, 1929, and that, after the exchange of stock, the Glidden Company would cause the Metals Company to transfer its assets to the new Ohio company. This transaction was carried out and, as a result, Groman received certain shares of the stock of the Glidden Company, shares of the new Ohio stock, and $17,293 in cash. In his return for 1929 Groman included the cash as income but did not include the shares of stock of the Glidden Company and of the new Ohio company, claiming, as plaintiff here claims, that the stock of the Glidden Company was received in exchange in a reorganization and that the Glidden Company was a party to a reorganization within the meaning of section 112 of the Revenue Act of 1928. The Commissioner of Internal Revenue held that the Glidden Company was not a party to a reorganization and that the stock received by Groman in that company was taxable in 1929 to the extent of the gain derived from the exchange. The court held that the Glidden Company was not a party to the reorganization and that the gain to Groman through the receipt by him of the stock of the Glidden Company was taxable in 1929. The court in construing the reorganization sections of the Revenue Act of 1928 said, 302 U.S. at page 89, 58 S.Ct. at page 112, 82 L.Ed. 63: "* * * where, pursuant to a plan, the interest of the stockholders of a corporation continues to be definitely represented in substantial measure in a new or different one, then to the extent, but only to the extent, of that continuity of interest, the exchange is to be treated as one not giving rise to present gain or loss."

In Helvering v. Bashford, supra, it appeared that the Atlas Powder Company, being desirous of eliminating the competition of Peerless Explosives Company, Union Explosives Company, and Black Diamond Powder Company and deeming it unwise to do so by buying either their stock or assets, conceived and consummated a plan for consolidating the three competitors into a new corporation with Atlas to get a majority of the stock of such new corporation. To this end the holders of the stock of the three companies mentioned were approached by individuals representing the Atlas Company, and their agreements to carry out the plan were obtained. The new Ohio corporation was formed and became the owner, practically, of all the stock and all the assets of the Peerless, Union, and Black Diamond companies. The Atlas Company became the owner of all the preferred stock and 57 per centum of the common stock of the new corporation; and, in exchange for the stock in the three old companies mentioned, each of the former stockholders of such old companies received some common stock in the new company, some Atlas Company stock, and some cash which Atlas supplied. Upon these facts the court, 302 U.S. at page 457, 58 S.Ct. at page 308, 82 L.Ed. 367, said: "Applying the rule [announced in Groman v. Commissioner, supra, 302 U.S. page 89, 58 S.Ct. 108, 82 L.Ed. 63] here, we hold likewise that the Atlas stock was 'other property' and Bashford, therefore, liable on the deficiency assessment; because the Atlas Powder Company was not 'a party to the reorganization.'"

In the Bashford case the plaintiff, in an attempt to distinguish Groman v. Commissioner, supra, contended that the Atlas Company should be held to be a party to the reorganization for the reason that it acquired not only a majority of the voting shares of all other classes of stock of the new corporation in the reorganization, but all the stock of the Peerless and Union Companies in direct exchange for such stock of

Peerless and Union; that the plaintiff and other stockholders of those companies received certain shares of stock of the Atlas Company; that the Atlas Company, unlike the Glidden Company in the Groman case, was a party to all the exchanges, while the new company was a party only to exchanges with Atlas; and that the stockholders of Peerless and Union did not participate in the contract or exchange between Atlas Company and the new company. As to these claimed distinctions, the court said, 302 U.S. at page 458, 58 S.Ct. at page 309, 82 L.Ed. 367: "Any direct ownership by Atlas of Peerless, Black Diamond, and Union was transitory and without real substance; it was part of a plan which contemplated the immediate transfer of the stock or the assets or both of the three reorganized companies to the new Atlas subsidiary. Hence, under the rule stated, the above distinctions are not of legal significance. The difference in the degree of stock control by the parent company of its subsidiary and the difference in the method or means by which that control was secured are not material. The participation of Atlas in the reorganization of its competitors into a new company which became a subsidiary did not make Atlas 'a party to the reorganization.' The continuity of interest required by the rule is lacking."

The facts which obtained in the Groman and Bashford cases, supra, are not distinguishable from the facts in the case at bar, and we think the rules announced in those cases are controlling here.

In the case of Samuel A. Neidich v. Commissioner of Internal Revenue, 38 B.T.A. 1178, the United States Board of Tax Appeals held that Neidich, who was a stockholder and the president of the Neidich Process Company of New Jersey (the old company), was taxable upon the gain derived by him through the receipt in 1929 of stock of the Underwood-Elliott-Fisher Company in the transaction here involved, for the reason that the Underwood Company was not a party to the reorganization, and in that opinion we concur. See, also, Mellon v. Commissioner of Internal Revenue, 36 B.T.A. 977; Hedden v. Commissioner, 37 B.T.A. 1082.

Plaintiff relies upon Helvering v. Minnesota Tea Company, 296 U.S. 378, 56 S.Ct. 269, 80 L.Ed. 284, and Schuh Trading Co. et al. v. Commissioner of Internal Revenue, 7 Cir., 95 F.2d 404. In our opinion the Minnesota Tea case is not in point, and the Schuh Trading Company case is not in harmony with the decisions in Groman v. Commissioner, supra, and Helvering v. Bashford, supra.

Plaintiff is not entitled to recover and the petition is dismissed.

It is so ordered.