*Decisions will be entered under Rule 50.*

ANHEUSER-BUSCH, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MELROSE ICE CREAM CORPORATION, A DISSOLVED CORPORATION, ADOLPHUS BUSCH III, CHARLES D. RUSSELL, GUS G. KINDERVATER, AND WILLIAM J. LANDES, SURVIVING MEMBERS OF THE LAST BOARD OF DIRECTORS, AND TRUSTEES FOR THE CREDITORS AND STOCKHOLDERS OF SAID MELROSE ICE CREAM CORPORATION, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 86450, 86453. Promulgated December 14, 1939.

*Daniel N. Kirby, Esq., Allen C. Orrick, Esq.,* and *Harry W. Kroeger, Esq.,* for the petitioners.

*W. H. Schwatka, Esq., R. E. Maiden, Jr., Esq.,* and *Edward L. Updike, Esq.,* for the respondent.

1102

**OPINION.**

OPPER: It is assumed by the parties that the agreement between Anheuser-Busch (petitioner) and Borden contained a "plan of reorganization" within the meaning of section 112 (i) (1) (A) of the Revenue Act of 1928. *John A. Nelson Co.* v. *Helvering*, 296 U. S. 374; see *Groman* v. *Commissioner*, 302 U. S. 82; but cf. *Bus & Transport Securities Corporation* v. *Helvering*, 296 U. S. 391. There remains to be considered the issue actually litigated in this proceeding, namely, whether Borden was a "party to a reorganization" within the meaning of section 112 (g) so that its securities, when distributed to petitioner, are free from the recognition of gain; and under section 112 (b) (4) so that no gain is to be recognized to Melrose upon receipt by it of the Borden shares or their equivalent.

From the controlling authorities bearing upon this question, three principles emerge which appear to dispose of the present issue. It seems evident that the first principle, enunciated in *Groman* v. *Commissioner*, *supra*, that the securities of a parent corporation are not those of a party to a reorganization where the property transferred is received by a subsidiary, would be unquestionably applicable here were it not for the two facts, first, that the transfer was made to the subsidiary indirectly through the parent (Borden), and, second, that

the agreement embodying the plan did not specifically require the organization of or transfer to the subsidiary but made it optional with the parent.

The first distinction is disposed of by the second principle, established by *Helvering* v. *Bashford*, 302 U. S. 454, in the following language:

> Any direct ownership by Atlas [the parent] of Peerless, Black Diamond, and Union [the subject of the transfer] was transitory and without real substance; it was part of a plan which contemplated the immediate transfer of the stock or the assets or both of the three reorganized companies to the new Atlas subsidiary.

If, as part of the plan, the assets of Melrose were transferred through Borden to Delaware, Borden's ownership was equally transitory and without real substance, and its status as a party to the reorganization equally without foundation.

The second distinction is similarly met and refuted by the third principle exemplified by *A. W. Mellon*, 36 B. T. A. 977, 1078 *et seq.*, and *Gilbert D. Hedden*, 37 B. T. A. 1082; affd., 105 Fed. (2d) 311 (C. C. A., 3d Cir.); certiorari denied, 308 U. S. 575. In each of these cases the transfer was actually made to a subsidiary nominee of the parent. There was no provision of the plan which required the participation of the subsidiary. In each case it was the privilege of the parent, the party to the contract of reorganization, to determine whether it or its subsidiary would receive the transferred property. In each case we may assume that, if the parent itself had elected to receive and hold the property, the rule of the *Groman* and *Bashford* cases would have been inapplicable. In each case, however, the parent chose to avail itself of the optional provision and to have the property conveyed to its subsidiary. The transferor in those cases was not entitled to be consulted, and for all that appears was not. The conclusion to be gathered from these decisions is therefore that the intervention of a subsidiary will be treated as a part of the plan, if it is a contemplated possibility under the plan and actually eventuates.

Applying those principles to the present situation it follows that Borden's election to organize Delaware and utilize it for the receipt of the transferred property has the same legal effect as though the plan provided no other alternative, *A. W. Mellon, supra; Gilbert D. Hedden, supra;* that the transfer of the assets to Delaware through the temporary medium of Borden has the same legal effect as though the assets were transferred directly from Melrose to Delaware, *Helvering* v. *Bashford, supra;* and that the transfer of property to Delaware, the subsidiary corporation, pursuant to the plan of reorganization, in exchange for securities of the parent, Borden, results in the taxable receipt by the transferor, Melrose, or its stockholders of "other prop-

erty",[1] since Borden was not a party to the reorganization, *Groman* v. *Commissioner, supra*.

It is true petitioner had no voice in the decision that the property was to be received and held by Delaware rather than by Borden. Neither did those contracting on behalf of the transferors in the *Mellon* and *Hedden* cases. It may also be true that through the exercise of volition by a third person petitioner and Melrose were placed in the position of having entered into a taxable transaction in lieu of one that would have been tax-free. But that is no more than to say that by their own act they put it within the power of another so to control the essential character of that transaction that the taxing provisions of the revenue act became operative. That is no justification for concluding that they did not become operative, nor for relieving petitioner and Melrose of the tax consequences of the transaction which actually eventuated. To hold otherwise would be tantamount to applying the tax law on the basis of what was hoped for rather than of what occurred.

We need not decide whether the result would be different if the transfer to Borden's subsidiary had occurred after a significant interval. The question might then arise as an issue of fact whether the subsequent transfer was part of the effectuation of the plan of reorganization or independent of it. Here there can be no question. Delaware was organized before the closing of title. It was created for the express purpose of acquiring the property and with the coöperation, as was required by the contract, of petitioner and Melrose. It was entitled by the terms of a specific agreement with Borden to receive all of the assets transferred and did in fact immediately receive them. Some of the assets were actually transferred directly to the subsidiary without even the intervention of Borden. This would have been a technical noncompliance with the reorganization agreement except on the assumption that upon the exercise of Borden's option both parties contemplated that the subsidiary and not Borden was the true party to the transfer. The step is characterized in petitioner's brief as "confirmatory short-cuts for record purposes", a statement consistent with the view that all of the transfers through Borden were merely the longer path to the contemplated result that the subsidiary was to be the recipient of all the transferred assets. *Minnesota Tea Co.* v. *Helvering*, 302 U. S. 609. And, if more were needed, the contract shows that it was intended that the subsidiary, if organized at all, would be created before the transfer of the assets, because the help of Melrose in its organization is stipulated for, and Melrose was to be dissolved immediately after the closing.

---

[1] Sec. 112 (d), Revenue Act of 1928.

These considerations we believe to be unnecessary to reach the result that under the contract as it was actually carried out the Borden Co. was not a party to the reorganization within the meaning of section 112. But they furnish conclusive evidence, if that were required, that coincident with the consummation of the plan of reorganization it was definitely contemplated by the parties that the subsidiary and not the parent should be the transferee; and accordingly that under the doctrine of the *Groman* and *Bashford* cases the subsidiary and not the parent was a party to the reorganization.

The second issue involves the gain, if any, to be recognized as to Melrose by Borden's payment to petitioner of Melrose's $500,000 debt. On this point it has been held that the assumption and discharge of a transferor's debt as part of the consideration for the transfer of its assets is taxable to it as "other property" received. *United States* v. *Hendler*, 303 U. S. 564; see also *Helvering* v. *Blumenthal*, 296 U. S. 552. The indebtedness was paid by the delivery of $300,000 in cash and 2,500 shares of Borden's stock having a stipulated value of $184,687.50. Respondent has chosen to determine the deficiency on the basis of these combined amounts. It may be that the correct amount would have been $500,000, since that is the measure of the benefit to Melrose accruing from the discharge of its obligation. Since, however, respondent has elected to proceed upon a theory involving a smaller deficiency, we find it unnecessary to decide that point. At least to the extent of the figures stated, Melrose received a taxable consideration.

After the Board heard these proceedings and received the principal briefs the Revenue Act of 1939 became law. Section 213 (f)[2] of that Act contains provisions obviously designed[3] to limit the scope of the *Hendler* decision. The language of the section, however, and if more were necessary its legislative history,[4] demonstrate that it was not intended to apply to such a case as this. Its operation is confined to a situation "where upon an exchange * * * the tax-

---

[2] SEC. 213. ASSUMPTION OF INDEBTEDNESS.
      *       *       *       *       *       *

(f) ASSUMPTION OF LIABILITY NOT RECOGNIZED UNDER PRIOR ACTS.—

(1) Where upon an exchange occurring in a taxable year ending after December 31, 1923, and beginning before January 1, 1939, the taxpayer received as part of the consideration property which would be permitted by subsection (b) (4) or (5) of section 112 of the Revenue Act of 1938, or the corresponding provisions of the Revenue Act of 1924 or subsequent revenue Acts, to be received without the recognition of gain if it were the sole consideration, and as part of the consideration another party to the exchange assumed a liability of the taxpayer or acquired from the taxpayer property subject to a liability, such assumption or acquisition shall not be considered as "other property or money" received by the taxpayer within the meaning of subsection (c), (d), or (e) of section 112 of the Revenue Act of 1938, or the corresponding provisions of the Revenue Act of 1924 . or subsequent revenue Acts, and shall not prevent the exchange from being within the provisions of subsection (b) (4) or (5) of section 112 of the Revenue Act of 1938, or the corresponding provisions of the Revenue Act of 1924 or subsequent revenue Acts; * * *

[3] 76th Cong., 1st sess., House Rept. No. 855, p. 5.

[4] *Ibid*, pp. 18–20.

payer received as part of the consideration property which would be permitted * * * to be received without the recognition of gain if it were the sole consideration * * *." Since we have already determined that no part of the present consideration may be so treated, nothing in this legislation need qualify the conclusion reached. So much is conceded by petitioner's counsel.

Finally, as it may if necessary,[5] the Board on its own motion questioned its jurisdiction to consider the proceeding in Docket No. 86453 brought on behalf of petitioner Melrose Ice Cream Corporation. This action was taken, not on the theory that that petitioner was a dissolved corporation,[6] for it appears affirmatively from the pleadings that it is its surviving board of directors which brings the proceeding as trustee in liquidation, for which purpose the corporation retains a nominal existence;[7] but rather to enable us to satisfy ourselves that there has been determined against that petitioner a deficiency from which it can appeal.

After further consideration, we are of the opinion that jurisdiction exists. Although the deficiency letter was addressed to its parent, it may nonetheless be regarded as sent to petitioner Melrose. *Furniture Exhibition Building Co.*, 24 B. T. A. 1279, 1289. Since the corporations had joined in a consolidated return, "notice to either was notice to both." *American Auto Trimming Co.* v. *Lucas*, 37 Fed. (2d) 801, 804 (App. D. C.). The letter proposed a deficiency in the parent's "income tax liability and that of your affiliated companies." And unlike the situation in *American Creosoting Co.*, 12 B. T. A. 247, it went further and stated: "The deficiency will be assessed severally against each corporation." Since there is no doubt of the liability of a subsidiary for a tax asserted against its parent under such circumstances, *Mississippi River & Bonne Terre Railway*, 39 B. T. A. 995, and since the notice unequivocally asserted a deficiency as to the subsidiary and proposed assessment against it, we see no reason why the letter should not be regarded as a notice of deficiency as to the petitioner, Melrose Ice Cream Corporation. That being so, it is entitled to prosecute an appeal to this Board. Revenue Act of 1928, sec. 272.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

[5] *Herbert Brush Manufacturing Co.*, 22 B. T. A. 646.
[6] Cf. *Herbert Brush Manufacturing Co., supra.*
[7] New York General Corporation Law, sec. 29.