JESSIE PRITCHARD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 90172. Promulgated December 26, 1939.

*Mark F. Mathewson, Esq., Joe S. Pearson, Esq.,* and *J. H. Ballinger, Esq.,* for the petitioner.
*B. H. Neblett, Esq.,* for the respondent.

### OPINION.

KERN: This case involves a deficiency of $557.88 in income tax for the year 1934, and raises the single question whether the transaction between two national banks was a corporate reorganization and tax-free to the petitioner shareholder, or was a sale.

The facts for the most part were stipulated and are as follows:

Sometime before June 7, 1934, the First National Bank of Seattle, Washington, hereinafter called "Seattle", approached the First National Bank of Shelton, Washington, hereinafter called "Shelton", with the object of establishing a branch at the location of Shelton. Permission to do this was obtained by Seattle from the Comptroller

---

of the Currency on June 15, 1934, and to carry it out, it was decided that Seattle should purchase or otherwise acquire the assets of Shelton, and it was, therefore, agreed on June 7, 1934, that Seattle should assume all Shelton's liabilities in exchange for certain assets of Shelton's, the exchange being on the basis of so much of Shelton's assets as equaled its liabilities on a day certain.

Such assets as might exceed the liabilities were not touched upon in this agreement, but were left to be covered by an agreement entered into on the same day between all stockholders of Shelton, on the one side, and Seattle, the First National Co., a wholly owned subsidiary of Seattle, and William G. Reed as liquidating agent designated by Shelton's stockholders to handle the settlement of its affairs, on the other.

By the terms of this agreement the excess of assets over liabilities was determined to be $183,750, which was the amount of cash on deposit to the credit of Shelton remaining after Seattle had taken over the assets equal to the amount of the liabilities of Shelton. This sum of $183,750 was received by the liquidating agent as trustee for the stockholders of Shelton and was used to purchase 7,350 shares of stock of Seattle from the First National Co. The liquidating agent by check drawn on Shelton dated June 19, 1934, paid to the First National Co. this amount in payment for this stock. These 7,350 shares were distributed ratably to stockholders of Shelton, the petitioner as a stockholder being entitled to receive 955.5 shares.

The terms of this agreement were fully carried out, in excess of 99 percent of the entire assets of Shelton being allocated pursuant to the terms of the agreements. The remaining assets of less than one percent consisted of an odd amount of cash resulting from a change in Shelton's cash on hand at the close of the last banking day, including service charges; refund of prepaid insurance premiums; refund on reserve for taxes; and an odd amount of cash resulting from the excess of the subsequent sale price over the appraised value of certain municipal bonds transferred to Seattle, such assets amounting to $4,601.76.

This amount was turned over to the stockholders of Shelton in addition to the stock in Seattle, and the stockholders of Shelton surrendered their stock in the latter bank to the liquidating agent for cancellation.

The distribution was based on 14.7 shares of Seattle stock for each share of Shelton stock owned. However, to obtain some additional cash, petitioner entered into an arrangement with the liquidating agent to dispose of the proceeds received in exchange for 5 shares of Shelton stock, i. e., 73.5 shares of Seattle stock, and to receive the balance in shares of Seattle.

Accordingly, the petitioner received 882 shares of stock of Seattle, which had a fair market value when received of $22,050, and $2,377 in cash, representing proceeds of the sale of 73.5 shares of stock of Seattle in the sum of $1,837.50, and additional cash of $539.50, being a total of $24,427. In her return the petitioner reported the sum of $1,835.35 as the amount of gain to be taken into account in computing net income.

The shares of stock owned by the petitioner in Shelton had a basis of $15,015.94.

In the deficiency notice taxable gain is determined on the basis of receipt, by the petitioner, of a liquidating dividend in the amount of $24,427 less the petitioner's basis for her shares of stock in the First National Bank of Shelton of $15,015.94, or a net gain of $9,411.06, of which gain 100 percent is taken into account in computing net income.

The agreement between Seattle and Shelton and that between the shareholders of Shelton, Seattle, the First National Co., and William G. Reed, as liquidating agent of Shelton, were put in evidence, and are incorporated here by reference.

The sole question is whether this transaction constitutes reorganization under the Revenue Act of 1934. The respondent objects that the language of the two agreements is that of seller and buyer; and that the First National Co. is a third party and not a party to the reorganization. Respondent insists that the transaction was not a statutory merger or consolidation under the National Banking Act, and so not within section 112 (g) (1) (A); that the acquisition by Seattle of Shelton's assets was only of that part of them which equaled the bank's liabilities and so not of "substantially all the properties of another corporation"; and that the simultaneous and parallel exchange of Seattle stock for the balance of Shelton's assets, $183,750, in cash, was made not by the Seattle bank but by its wholly owned subsidiary, First National Co.; so that the requirements of subsection (B) would not be met; and, obviously, as may be admitted, subsections (C), (D), and (E) are inapplicable.

We think that such a view of the transactions is too narrow and fails to see them, as they really were, as merely steps in a single plan. Undoubtedly what was sought to be done was that Seattle's stock should be acquired by Shelton's shareholders in exchange for Shelton's assets and that Shelton's shareholders, including petitioner, would thus become the owners in part of Seattle and with an interest, therefore, in the branch of Seattle which was to supersede Shelton in the banking business in that town. The record does not inform us whether Seattle's branch was established at Shelton, as contemplated, but is very clear that the whole transaction had that object in pros-

pect and was conditioned on the Comptroller of the Currency's approval of it. We may assume in petitioner's favor that this was accomplished. When this is said, however, all has been said in petitioner's favor which can be on the record; for even if this were not a sale, as respondent contends, but in essence a reorganization, it still does not conform to the definition of a reorganization provided by section 112 (g) of the Revenue Act of 1934, set out in the margin.[1]

The transaction was not carried out as a statutory merger under the National Banking Act, as amended (paragraph 33, Title 12, U. S. Code Annotated), but was a liquidation under section 181 of the same title. Therefore, it follows that the transaction was not covered by subsection (A). No contention is made by petitioner that the transaction is covered by subsections (C), (D), and (E), and it is obvious that these subsections are inapplicable. The only portion of subsection 112 (g) which might possibly be applicable to the transaction here involved is subsection (B), containing the definition of a reorganization as "the acquisition by one corporation in exchange solely for all or a part of its voting stock * * * of substantially all the properties of another corporation." An analysis of the facts disclosed in this proceeding indicates clearly that the transaction was one not covered by this subsection. The assets of Shelton which were acquired by Seattle were not acquired "solely for all or a part of its voting stock", but were acquired in consideration of Seattle's assumption of an equivalent amount of Shelton's liabilities. The remainder of Shelton's assets, represented by cash in the hands of the liquidating agent, was acquired by the First National Co., and was not acquired by it in exchange for its stock, but in exchange for the stock of Seattle.

Moreover, the transaction lacks what the Supreme Court has said in no uncertain terms is a *sine qua non* of a tax-free transaction, a continuity of interest in the old shareholders, whose corporation's assets are transferred, in those same assets after the transfer. *Groman* v. *Commissioner*, 302 U. S. 82; *Helvering* v. *Bashford*, 302 U. S. 454.

The significant thing here is that the transfer of Shelton's assets by the liquidating agent was made to the First National Co., and not to Seattle. That company, it is true, was a wholly

---

[1] (g) DEFINITION OF REORGANIZATION.—As used in this section and section 113.

(1) The term "reorganization" means (A) a statutory merger or consolidation, or (B) the acquisition by one corporation in exchange solely for all or a part of its voting stock; of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of another corporation; or of substantially all the properties of another corporation, or (C) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which the assets are transferred, or (D) a recapitalization, or (E) a mere change in identity, form, or place of organization, however effected.

owned subsidiary, but this fact does not alter the fundamental fact that a distinct corporate entity had been interposed between Shelton's former shareholders who had now become Seattle's shareholders, and their interest in the assets formerly held by Shelton. As shareholders of Seattle, had Seattle taken over directly and held Shelton's assets, they would have had a continuing interest in what they had held before while shareholders of Shelton, but all they held now was an interest in the stock of the First National Co. to which the Shelton assets had been transferred, by virtue of their ownership of Seattle stock. The continuity of interest was forever broken. We must hold the exchange, therefore, not a reorganization. *Groman* v. *Commissioner, supra.* And the result would be the same even if it could have been shown, a fact which the record contradicts, that Shelton's assets had been transferred momentarily to Seattle and then by Seattle to the First National Co., for the interest would have been only transitory, fleeting, and illusory. It must be material and permanent. *Helvering* v. *Bashford,* supra.

The point need not be labored, since it has been fully discussed in our decisions. Cf. *Whitney Corporation,* 38 B. T. A. 224; affd., 105 Fed. (2d) 438; *Anheuser-Busch, Inc.,* 40 B. T. A. 1100. See note, 51 Harvard Law Review 893.

Reviewed by the Board.

*Decision will be entered for the respondent.*