ANHEUSER–BUSCH, Inc., v. HELVERING, Commissioner of Internal Revenue.

MELROSE ICE CREAM CORPORATION et al. v. SAME.

Nos. 11751, 11752.

Circuit Court of Appeals, Eighth Circuit.

Nov. 27, 1940.

Rehearing Denied Dec. 19, 1940.

Harry W. Kroeger, of St. Louis, Mo. (Daniel N. Kirby and Allen C. Orrick, both of St. Louis, Mo., on the brief), for petitioners.

Morton K. Rothschild, Sp. Asst. to Atty. Gen. (J. Louis Monarch, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before SANBORN and THOMAS, Circuit Judges, and DEWEY, District Judge.

THOMAS, Circuit Judge.

These cases come before the court upon separate petitions to review a decision of the United States Board of Tax Appeals entered February 10, 1940, redetermining the income tax liability of Anheuser-Busch, Inc., and its affiliates for the year 1930. The opinion of the Board is reported in 40 B.T.A. 1100. Upon request of the petitioners the appeals from the Commissioner's determination were consolidated for hearing before the Board; and the petitions to this court to review the decision may be disposed of in a single opinion.

The controversy arises out of a corporate reorganization in which four corporations are involved. They are Anheuser-Busch, Inc., a Missouri corporation, herein called the taxpayer; Anheuser-Busch Ice and Cold Storage Company, Inc., a New York Corporation which on September 20, 1930, changed its name to Melrose Ice Cream Corporation, herein called New York; the Borden Company, organized under the laws of New Jersey, herein called Borden; and Anheuser-Busch Ice Cream Company, Inc., organized under the laws of Delaware and herein called Delaware.

New York was the reorganized corporation and Delaware is the new corporation which emerged. New York's stock was all beneficially owned by the taxpayer and Delaware is a subsidiary of Borden.

New York was engaged in manufacturing and selling ice and ice cream and in operating a cold storage business prior to the reorganization and thereafter it was dissolved.

Two questions are presented:

First, whether stock distributed by the Borden Company to Anheuser-Busch, Inc., the taxpayer, in exchange for the assets of Melrose Ice Cream Corporation, the New York company, was free from the recognition of gain under section 112 (b) (4) of the Revenue Act of 1928, 26 U.S.C.A. Int. Rev.Acts, page 377; and

Second, whether the assumption and payment to the taxpayer of certain liabilities of the Melrose Ice Cream Corporation by the Borden Company should be considered as "other property or money" under section 112 (d) of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Acts, page 378, and not within the scope of section 213 (f) of the Revenue Act of 1939, 26 U.S.C.A. Int.Rev. Acts, page 1177.

Section 112 (b) (4) of the Revenue Act of 1928 provides that "No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization."

The answer to the first question depends upon whether Borden was a party to the reorganization of New York. If so, there was no recognizable (taxable) gain under the statute arising from the transfer of Borden stock to the taxpayer. The determination of this matter requires a review of the facts.

The plan of reorganization under consideration was embodied in a contract entered into between the taxpayer and Borden in 1930.

On August 6, 1930, Borden addressed a proposal to the taxpayer which was accepted on August 26th of the same year. Borden proposed that the taxpayer, through ownership and control of the capital stock, should effect a reorganization of New York in pursuance whereof New York should convey, assign and transfer all its assets and its business as a going concern to Borden subject to all its liabilities, except certain liabilities immaterial to the issues here, in

consideration for which Borden proposed to issue and deliver to New York, or upon its proper written order, to its stockholders, 35,000 shares of Borden's stock and to assume and pay New York's liabilities, with the exceptions noted.

In assuming New York's liabilities Borden agreed to pay $500,000 indebtedness owed by New York to the taxpayer by payment to the taxpayer of $300,000 cash and the issue and delivery of 2500 shares of Borden stock.

The contract (proposal) provided further: "Second. J. That at or before closing of title hereunder, you shall take and/or cause the New York company to take all proceedings necessary to change the corporate title of the New York company to a name entirely dissimilar to its present name in which the words 'Anheuser-Busch' shall not appear. Such new corporate title shall be subject to our approval. It is the intent and purpose of this provision that we shall be at liberty to organize a new corporation under the laws of such jurisdiction as we may select under a name including the words 'Anheuser-Busch' for the purpose of taking over and continuing the business now owned and/or operated by the New York company and you and/or the New York company shall co-operate with us as we may reasonably request to permit the organization and/or qualification of such new corporation in all jurisdictions where the New York company owns property and/or does business, provided, however, that such new subsidiary shall not be called 'Anheuser-Busch, Inc.' and that the corporate title of such new subsidiary shall be approved by you."

Other provisions of the contract related to warranties as to the correctness of financial statements, valuations, tax liabilities, an agreement not to compete in business, and such like matters.

On September 9, 1930, Borden brought about the organization of Delaware, and on September 16, 1930, the taxpayer filed with the Secretary of State of New York its written consent to the use by Delaware of the corporate name Anheuser-Busch Ice Cream Co., Inc.

On September 19, 1930, Delaware accepted an offer from Borden of all the assets, business, and good will which Borden had contracted to acquire from New York. In consideration of the transfer Delaware agreed to issue and deliver to the Borden's Ice Cream & Milk Co., a wholly owned subsidiary of Borden, 25,000 shares of the capital stock of Delaware, that being all of the then outstanding capital stock of Delaware.

September 26, 1930, was fixed as the closing date. On that day New York executed and delivered to Borden a document styled "Bill of Sale and Assumption of Liabilities" whereby for a recited consideration, including 35,000 shares of the capital stock of Borden, New York transferred to Borden as of March 31, 1930, all of New York's property and assets and its business as a going concern. It was recited in the bill of sale that separate deeds to the real estate and assignments of trade-marks, patents, copyrights, leases, etc., should be executed and delivered.

As a part of the closing, New York executed and delivered to Borden two deeds conveying to Borden the real estate constituting the manufacturing plants of New York located in New York City.

At the same time the taxpayer delivered to Borden the various guaranties and agreements required by the contract relating to deficiencies and assets, tax liabilities, competition in business and the like; and New York made a trade-mark assignment to Borden and an assignment of interests as lessee in two leases having a combined rental of $1,400 a year directly to Delaware. At the same time it entered into an agreement for the substitution of Delaware for itself in a contract for the purveyance of ice.

As a further part of the closing Borden issued and delivered directly to the taxpayer instead of to New York 35,000 shares of Borden's capital stock, an authority to do so having been executed by New York on September 22, 1930.

On the same date, September 26, 1930, subsequent to the closing between the taxpayer and Borden, Borden, by a bill of sale in substantially the same form as that used in the closing between the taxpayer and Borden, transferred to Delaware all the assets, business and good will acquired by Borden from New York. The bill of sale recited that Borden had caused Delaware to be organized for the purpose of having it acquire from Borden the assets and business of New York. The bill of sale also contained a provision whereby Delaware assumed and agreed to pay all taxes payable by Borden in respect of the business acquired by it from New York, pursuant to the agreement herein referred to as the contract of August 6, 1930, and all other indebtedness and liabilities of Borden in con-

nection with the assets and business transferred as of the date of the bill of sale.

The Board found that the taxpayer was in no way consulted as to the desirability or advisability of the organization of Delaware by Borden as its subsidiary for the purpose of conducting the business; nor was the taxpayer consulted as to the desirability of the proposed conveyance by Borden to Delaware of the assets of New York, which were to be conveyed to Borden; and that the taxpayer had no direct interest in the disposition of the assets of New York by Borden after their transfer to Borden.

Upon these facts the Board concluded that as a matter of law Borden was not a party to the reorganization of New York. Unless this conclusion is erroneous its decision must be affirmed.

Subsection (i) (1) of section 112 of the Revenue Act of 1928, 26 U.S.C.A. Int. Rev.Acts, page 379, reads: "The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of * * * substantially all the properties of another corporation)."

In this case Borden first acquired "substantially all the properties" of New York and immediately transferred them to Delaware. The appellant taxpayer contends that the transfer to Borden of the assets of New York must be disassociated from the subsequent transfer by Borden of those assets to its subsidiary, Delaware. The transaction was effected "in pursuance of a plan" (subsection (b) (4) of section 112) embodied in the contract of August 6, 1930, between the taxpayer and Borden. If that contract "envisaged a reorganization" by the terms of which, as construed by the parties, it was "contemplated" that the assets of New York were to be acquired by Delaware in exchange for a consideration to be paid by Borden, then Borden was not a party to the reorganization and the Borden stock received by the taxpayer was "other property" within the meaning of the statute. Groman v. Commissioner, 302 U.S. 82, 88, 58 S.Ct. 108, 82 L.Ed. 63. This is true because the interest of the taxpayer as the sole beneficial owner of all the capital stock of New York did not continue to be measured by a substantial interest in the assets in the ownership of Delaware after the reorganization was completed. Borden's participation in the transaction would not make it a party to the reorganization. The required continuity of interest is lacking. Groman v. Commissioner, supra; Helver-

ing v. Bashford, 302 U.S. 454, 456, 58 S.Ct. 307, 82 L.Ed. 367.

Petitioners contend that certain distinctions between the Groman and Bashford cases, and the principles to which they give rise, compel a result different from that reached in those cases. The distinctions relied upon are:

(a) In the instant case there was a direct conveyance of the assets of New York to Borden, whereas Glidden in the Groman case and Atlas in the Bashford case "received nothing."

(b) The exchanges of assets in the instant case were effected between New York and Borden, whereas in the Groman and Bashford cases the parent corporations, Glidden and Atlas, merely placed their subsidiaries in position to make the exchanges.

(c) Delaware did not participate in the reorganization pursuant to the terms of the agreement, whereas in the Groman and Bashford cases the subsidiaries were essential factors in the plans of reorganization.

(d) Borden, in the instant case, not only received the assets of New York, but it became the repository of all rights of action against the taxpayer under the covenants and warranties of the reorganization agreement and it became bound to assume the liabilities of New York. In short, Borden was not a mere agent in the reorganization but it was a principal.

All these distinctions of method are unimportant, if in fact the plan of reorganization did contemplate the taking over of the assets, business and good will of New York by Delaware as a part of the plan. The plan, it is to be observed, was formulated by Borden and set forth in its proposal of August 6, 1930. The taxpayer accepted that proposal and it became a contract. Clause "Second. J." of the contract provides unconditionally that the taxpayer shall cause the New York company to change its corporate title to a name entirely dissimilar to its present name in which the words "Anheuser-Busch" shall not appear. The contract then proceeds, "It is the intent and purpose of this provision that we [Borden] shall be at liberty to organize a new corporation * * * under a name including the words 'Anheuser-Busch' for the purpose of taking over and continuing the business now owned and/or operated by the New York company." It then provides that the taxpayer and New York "shall co-operate with us as we may reasonably request to

permit the organization and/or qualification of ·such new corporation * * *."

■ It is evident that at the time Borden formulated the proposal it had in mind a plan to organize a subsidiary to take over the assets of New. York, and it required the taxpayer to agree to co-operate in the carrying out of that plan. It is argued that because Borden included in the contract only the "liberty" to organize a subsidiary it was not bound to do so, even though the taxpayer was bound to co-operate if it should elect to do so, and that, therefore, the organization of Delaware was not a part of the plan. The best evidence that Borden had a firm intention and a fixed purpose to organize a subsidiary to take over the assets and business of New York is the fact that on September 9, 1930, it organized Delaware for that purpose; and on September 19, 1930, Delaware accepted an offer from Borden to take over the assets of New York in exchange for all of its then outstanding stock. When the realities of the transaction are considered there can be no doubt that the plan contemplated, and that the parties so understood it, that Borden would organize Delaware and that Delaware would take over the assets and carry on the business of New York. The plan as thus conceived and formulated was fully consummated with the full co-operation of the taxpayer ·and its subsidiary, New York. On this point the Board concluded "that coincident with the consummation of the plan of reorganization it was definitely contemplated by the parties that the subsidiary [Delaware] and not the parent [Borden] should be the transferee; and accordingly that under the doctrine of the Groman and Bashford cases the subsidiary and not the parent was a party to the reorganization." [40 B.T.A. 1108.] We agree with the· Board's conclusion. The direct ownership by Borden of the assets of New York was "transitory and without real substance". Helvering v. Bashford, supra [302 U.S. 454, 58 S.Ct. 309, 82 L.Ed. 367]. The transfer of the assets of New York to Borden had no corporate purpose. It was not intended, as shown by the contract of August· 6, 1930, to merge or consolidate the business of New York and Borden. The sole object and accomplishment of the plan was to transfer the business of New York, a subsidiary of the taxpayer, to Delaware, a subsidiary of Borden. It was clearly not contemplated that the taxpayer should continue to have

a substantial interest in the business which was transferred. The contract itself negatived any purpose to retain that continued interest required in a merger. It follows that Borden was not a party to the reorganization. Compare Hedden v. Commissioner, 3 Cir., 105 F.2d 311, certiorari denied, 308 U.S. 575, 60 S.Ct. 117, 84 L.Ed. 482, rehearing denied, 308 U.S. 636, 60 S.Ct. 172, 84 L.Ed. 529; United Light & Power Co. v. Commissioner, 7 Cir., 105 F.2d 866, 876; Davis v. United States, 26 F.Supp. 1007, 88 Ct.Cl. 579, certiorari denied 308 U.S. 574, 60 S.Ct. 90, 84 L.Ed. 481.

■ It was conceded both before the Board and in the briefs submitted in this court that if Borden was not a party to the reorganization the assumption and discharge of New York's liability to the taxpayer by the payment by Borden of $300,000 in cash and the issue and transfer of 2,500 shares of Borden stock is "other property or money" under section 112 (d) of the Revenue Act of 1928 and outside the scope of section 213 (f) of the Revenue Act of 1939.

The decision of the Board appealed from is affirmed.