### RIEGER v. COMMISSIONER OF INTERNAL REVENUE.

### PICKREL et al. v. SAME.

### SCHAEFFER v. SAME.
Nos. 9489–9491.

Circuit Court of Appeals, Sixth Circuit.
Nov. 30, 1943.

---

In case No. 9489:

Benjamin R. Shaman, of Dayton, Ohio, for petitioner.

In case No. 9490:

William G. Pickrel, of Dayton, Ohio, for petitioners.

In case No. 9491:

Virgil Schaeffer, of Dayton, Ohio, for petitioner.

Louise Foster and J. P. Wenchel, both of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, A. F. Prescott, and Mamie S. Price, all of Washington, D. C., on the brief), for respondents.

Before SIMONS, MARTIN, and McALLISTER, Circuit Judges.

MARTIN, Circuit Judge.

The Union Trust Company of Dayton, Ohio, was closed on October 31, 1931, and taken over for liquidation by the Superintendent of Banks of Ohio, pursuant to the law of that state, under which the bank was chartered. At the time of closing, the bank had some ninety thousand depositors who had an aggregate of $28,000,000 on deposit. Thousands of the depositors were school children, whose accounts were paid off in full immediately after the bank closed. All preferred and secured creditors' accounts were also paid in full and set-off credit was given debtors against their deposits. These adjustments were completed by April 1932; whereupon negotiable certificates of claim were issued to the remaining depositors of the bank who then numbered some fifty thousand persons, whose deposits totalled the approximate sum of $15,377,000.

With the approval of the Superintendent of Banks, borrowers were permitted to liquidate their bank indebtedness with these certificates of claim, sometimes at full face value, on other occasions at less than face value but more than market value. Union Trust Company certificates being in demand not only for use in the liquidation of indebtedness to the bank but also for speculative purposes, extensive trading in them ensued. In mid-year of 1932, some twenty brokerage houses in Dayton were dealing in these certificates and also in certificates

of claim issued by nineteen building and loan associations of Dayton which had suspended withdrawals. The volume of dealing in the certificates of all these closed financial institutions became so heavy that, in the fall of 1932, by concerted action the Dayton brokerage houses established an exchange for trading in and handling the certificates. Quotations of the bid and asked prices of the Union Trust Company certificates were furnished daily by the exchange for publication on the market page of local newspapers. The operating banks of the city of Dayton accepted the Union Trust Company certificates of claim as security on loans on the basis of these published market reports; and the market for the exchange of the certificates was active up to the final liquidation of the Union Trust Company. From time to time, dividends on the certificates were paid by the liquidator and, in each instance, such payment was endorsed on the back of the certificate.

In 1937, the petitioning taxpayers in these three consolidated cases purchased Union Trust Company certificates of claim and in their respective income tax returns reported their profits therefrom as capital gains. Rieger reported his capital gains for the years 1938 and 1939, and Schaeffer and Pickrel reported theirs for the single year 1939, in which the final liquidating dividend was paid and the certificates of claim were surrendered to the Superintendent of Banks of Ohio.

The Commissioner of Internal Revenue and the Board of Tax Appeals both held that under Section 117(f) of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Acts, pages 1061, 1063, the profits realized by the respective petitioning taxpayers from dividends received by them on the Union Trust Company certificates of claim purchased by each respectively constituted ordinary income and not capital gain. The correctness of the decisions of the Board of Tax Appeals (now the Tax Court of the United States) is challenged by the taxpayers' petitions for review addressed to this court.

Decision on this review must rest upon whether the certificates purchased by the petitioners are "certificates or other evidences of indebtedness" within the meaning of the quoted language of Section 117 (f) of the Revenue Act of 1938: "For the purposes of this title, amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form, shall be considered as amounts received in exchange therefor."

Inspection of the form of certificate of claim involved herein shows that the certificates were issued by the Superintendent of Banks of Ohio and signed by his special deputy in charge of liquidation of the Union Trust Company. On its face, the certificate states that the Union Trust Company of Dayton, Ohio, is justly indebted to the claimant named in the certificate in a definite sum of money, representing a bank balance, certificate of deposit, cashier's check, certified check, Christmas Account, or school savings' account; that the claimant or his lawful assignee will alone be entitled to dividends on the claim; and that the claim represented by the certificate is subject to any direct or contingent liability that now exists against the Union Trust Company, or that may hereafter exist against anyone to whom the certificate is issued or anyone who later by purchase or assignment may acquire the claim represented by the certificate.

This important language is printed on the face of the certificate: "No assignment of this claim, or any portion thereof will be recognized in payment of dividends, unless such assignment be endorsed on the back hereof, and notice thereof given to the Superintendent of Banks of Ohio, in charge of Liquidation of said Bank and entered upon its books before such dividends are declared.

"This Certificate shall be sole evidence of the above claim, and must be presented when each dividend is paid and surrendered upon payment of the final dividends."

Opposite the signature of the Special Deputy Superintendent of Banks of Ohio is printed the injunction: "Important—Do not lose this Certificate. Dividends cannot be collected without same." On the back of the certificate is printed an assignment form similar to that generally used in connection with the transfer of stock certificates. Beneath this assignment form is printed: "Above assignment accepted and entered this ...... day of ......, 193... L. D. Fulton, Superintendent of Banks of Ohio, by ......, Special Deputy Superintendent of Banks, in charge of the Liquidation of The Union Trust Company of

Dayton, Ohio." Underneath this form of acceptance and entry of the assignment is printed a table for endorsement of the dividends paid on the certificate, showing the number, percentage and date of the payment of the dividends.

Citing its previous decision in Mary D. Gerard v. Com'r of Int. Rev. 40 B.T.A. 64, affirmed Gerard v. Helvering, 2 Cir., 120 F.2d 235, the Board of Tax Appeals found that the Union Trust Company certificates of claim bore no interest coupons, and that there is no evidence that they were registered; and that, under the doctrine of noscitur a sociis, the certificates are not to be included in the statutory classification "bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation." Further interpretation by the Board was that Congress, in using the word "other," intended to limit the scope of the term "evidences of indebtedness." Its language in Norman Buckner v. Com'r of Int. Rev., 43 B.T.A. 958, was reiterated: "We can not accept the view that the careful and exclusive language of the section under consideration was designed to include anything so far afield as a receiver's certificate of proof of claim."

The tax tribunal reached the conclusion that the specimen certificate was neither a certificate or other evidence of indebtedness "issued by any corporation," nor a certificate "issued by a government or political subdivision thereof."

■ We are unable to concur in the reasoning and conclusions of the Board of Tax Appeals. In our view, the Union Trust Company certificates, issued in the circumstances, manner and form which have been described, are clearly to be classified as certificates of indebtedness issued in registered form by a corporation within the language and intent of Section 117(f) of the Revenue Act of 1938.

■ The mere fact that the corporation was in liquidation when the certificates were issued as evidence of its indebtedness to depositors does not negate the inclusion of the certificates within the scope of Section 117(f). In Ohio, claims against closed state banks, as evidenced by pass books or other instruments, are securities within the meaning of the terms as used in the Ohio Securities Act, Gen.Code, § 8624-1 et seq. Opinions of the Attorney General of Ohio (John W. Bricker), Vol. 1, Sec. 652, pp. 572, 574.

■■ But Ohio law aside, there appears no valid reason why the certificate of indebtedness of a corporation in liquidation should be rejected as not intended by Congress to be included within the purview of the section. Certainly, Congress made no such express exception; nor from the context, is any intended exception to be necessarily implied. The purpose in the enactment of Section 117 of the Revenue Act of 1938 was manifestly to differentiate between the income of a taxpayer received on the one hand from his personal service, profession, business or trade, or from interest, dividends, rents and the like, as defined in Section 22 of the Act, 26 U.S.C.A. Int.Rev.Acts, page 1008, and, on the other hand, from gains or losses accruing from investment of his capital assets, as defined in Section 117 of the Act. It is apparent that in enacting Section 117(f) Congress intended to broaden this differentiation to embrace the retirement of the class of securities enumerated in that section.

Upon this record, there can be no doubt that the taxpayers intended to, and actually did, invest portions of their capital assets in corporate certificates of indebtedness for speculative purposes. If the certificates purchased by them were "in registered form," the amounts received by them upon retirement of the certificates under the express terms of the statute "shall be considered as amounts received in exchange therefor."

That the Union Trust Company certificates were issued "in registered form," within a logical construction of Section 117(f), is obvious from mere inspection of the form of certificate which has been heretofore minutely described. The requirements on the face of the serially numbered certificate, issued to a named claimant, that in the payment of dividends no assignment would be recognized unless endorsed on the back of the certificate, that the Superintendent of Banks of Ohio should be notified of any assignment of the claim, and that the form for acceptance and entry of the assignment was to be signed on the back of the certificate by the official liquidating agent of the bank, demonstrate to our thinking that the Union Trust Company certificates are properly to be regarded as issued "in registered form."

Consideration has been given to three cases cited by the respondent Commissioner of Internal Revenue and no conflict ap-

**622**

pears to us between their respective holdings and our decision in the instant controversies. McClain v. Commissioner, 311 U.S. 527, 61 S.Ct. 373, 85 L.Ed. 319; Matheson v. Commissioner, 2 Cir., 54 F.2d 537; Gerard v. Helvering, 2 Cir., 120 F. 2d 235.

The decisions of the Board of Tax Appeals in these three cases (Nos. 9489, 9490, 9491) are reversed, and the causes remanded for appropriate procedure in conformity with this opinion.