## VANCE v. KAVANAGH.
### Civ. No. 7216.

United States District Court
E. D. Michigan, S. D.
Sept. 27, 1951.

Laurence A. Masselink and Beaumont, Smith & Harris, Detroit, Mich., for plaintiff.

Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe, Leland T. Atherton, Sp. Assts. to Atty. Gen., Edward T. Kane, U. S. Atty., Roger P. O'Connor, Asst. U. S. Atty., Detroit, Mich., for defendant.

LEVIN, District Judge.

In 1933 First National Bank—Detroit was deemed insolvent, and a receiver was appointed by the Comptroller of the Currency under authority of 12 U.S.C.A. § 192. At that time decedent, Ralph E. Gilchrist, was a large depositor and was also beneficially interested in another large deposit in the bank.

In accordance with the receiver's custom, certificates, in the form hereinafter described, were issued for these claims, and from time to time substantial distributions were received on account of these certificates.

Decedent died in 1936 and the plaintiff is the surviving testamentary trustee of his estate. The executors of the estate, of whom the plaintiff was one, included as an asset in the decedent's estate tax return the decedent's interest in such certificates, and valued such certificates at their then market value, a value less than the face of the balance owing thereon.

In 1940 the full balance owing on the said certificates was paid by the receiver's fifth and final dividend, and the excess over the cost basis of the certificates in the hands of the plaintiff was reported as a capital gain in plaintiff's income tax return for that year. An income tax deficiency was assessed on the ground that the distribution was ordinary income rather than a capital gain. The deficiency was paid and a timely claim for the refund of the disputed payment was disallowed.

The question presented is whether the income received by the plaintiff as a result of the said fifth and final dividend constituted a capital gain or ordinary income, and this in turn depends on whether the distribution is properly described by the provisions of Section 117(f), I.R.C. which reads as follows: "(f) Retirement of bonds, etc. For the purposes of this chapter, amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form, shall be considered as amounts received in exchange therfor." 26 U.S.C., 1946 ed., § 117.

The certificates issued by the receiver were each printed on a single sheet of paper and were captioned "First National Bank—Detroit, Detroit, Michigan." The top half of the page was a "Statement of Claimant" comprising a certification of the amount of the bank's indebtedness and an agreement to accept ratable dividends under the national bank laws; the bottom half was a serially numbered record of the receiver's certification that the claimant had made legal and satisfactory proof that he was a creditor of the bank.

The certificates were endorsed by the claimant when certain of the dividends were paid but were otherwise in the possession of the receiver. A receipt was given to and retained by the decedent stating the amount and the serial number of the certificate. The certificates were freely assignable but assignments could be made only on the books of the receiver. There were 544,630 claims proven and approximately 556,000 transfers of certificates were made, an average of fifty assignments per day over the life of the receivership.

In Rieger v. Commissioner of Internal Revenue, 139 F.2d 618, the Court of Appeals for this circuit held that dividends paid with respect to the certificates issued by the receiver of a state bank in Ohio, who was appointed by authority of state law, were certificates or other evidences of indebtedness within the meaning of Section 117(f) and were to be treated as capital gain. I am of the view that the opinion in that case is determinative of the question now before me. Counsel for the Bureau of Internal Revenue states that it is distinguishable from the case at bar for a number of reasons. One of the points advanced by them involves the requirement that the evidence of indebtedness be issued by a corporation. It is urged that a receiver appointed by the Comptroller of the Currency, unlike a receiver appointed under authority of Ohio law, has no authority to act for the corporation.

■ A receiver of a national bank, while not properly an agent of the bank, acts for the bank in performing the functions of a receiver. It is true that a receiver has, for his own protection, been termed an officer of the United States, United States v. Weitzel, 246 U.S. 533, 38 S.Ct. 381, 62 L.Ed. 872; Cooper v. O'Connor et al., 69 App.D.C. 100, 99 F.2d 135, 118 A.L.R. 1440, but it has also been held that the appointment of a receiver does not dissolve the corporation, United

States v. Weitzel, supra, and that the receiver is the statutory assignee of the bank representing both creditors and the bank and, as such, must discharge all of the obligations of the bank imposed by law. Hazen et al. v. Hardee, 64 App.D.C. 346, 78 F.2d 230; O'Connor et al. v. Rhodes, 65 App.D.C. 21, 79 F.2d 146. The receiver represents the bank and has power to contract for the bank, and in so doing must, despite his Federal origin, conform to state laws. Rosenberg v. Deitrick, D.C., 37 F.Supp. 700. His acts in carrying out the liquidation are the acts of the corporation, Hershey v. Anderson, D.C., 32 F.Supp. 1019; the former officers and directors have no further authority, and their powers are vested in the receiver, General Electric Realty Corporation v. First National Bank—Detroit, D.C., 23 F.Supp. 664. The Rieger decision makes it clear that the " * * * mere fact that the corporation was in liquidation when the certificates were issued * * * does not negate the inclusion of the certificates within the scope of Section 117(f)." [139 F.2d 621.]

■ Thus in certifying the amount of deposits still owed by the bank, the receiver acted for the bank and as its representative. The certificates issued by the receiver were, therefore, issued by a corporation within the meaning of Section 117(f).

In the Rieger case the certificates issued by the Ohio receiver were in the manual possession of the owner and, after making a statement of assignment on the certificate itself, could be freely assigned without reference to the books or records of the bank. Here the certificates, except for the initial and subsequent deliveries when receipt of dividends was acknowledged by endorsement on the certificate, were kept in the receiver's possession and were assignable only by transfer on the books of the corporation. Counsel for the defendant considers this to be a most significant distinction from the Rieger case and makes the following arguments in this connection.

■ It is claimed that these certificates were not "certificates or other evidences of indebtedness" but merely a certification that the claimant has made legal and satisfactory proof that he is a creditor of the bank. The argument is manifestly without merit. It is difficult to see how broader language could have been used in the statute; the documents in evidence in this case, certified by the receiver, were certainly evidence of a debt owed by the bank.

■ The second argument advanced is that because neither decedent nor plaintiff had physical possession of the certificates they were not "holders" within the meaning of the statute. The court is satisfied that the term is used to designate persons who have the right to collect the payments described in Section 117(f). The term is used not to create but to avoid technicalities. The practice employed by the receiver for the convenience of both the receiver and the owners of the certificates is not so different from the practice of many corporations with respect to their bonds and debentures as to give rise to the unreasonable limitation contended for by defendant in this case.

■ The contention that these claims were not marketable is clearly negated by the uncontradicted testimony. The fact that they were assignable only on the bank's books cannot impair that fact, for to allow transfer only on the corporation's books is in many instances a standard corporate practice; its use cannot affect the outcome of this case.

■ It is also contended that the certificates were not "issued" within the meaning of Section 117(f). This term was not used as a term of art to describe some particular method by which a corporate bond or other evidence of indebtedness must originate in order to come within the terms of the statute. Physical retention of the certificate or other evidence of indebtedness by the owner thereof is not required. It is established that the documents in question were evidences of an indebtedness that came into being because of an act for or by the corporation. The facts show that these documents established plaintiff's claim and that the endorsements were placed thereon after their execution and delivery by the receiv-

er. The facts establish the fulfillment of the statutory requirements.

██ The further argument is made that these certificates were not in registered form. The facts show clearly that the certificates were registered on the receiver's books and that the data necessary for registration appeared on the face of the certificates. The certificates meet the requirements considered necessary in the Rieger case. The certificates are serially numbered and were issued to a named claimant. That the procedure followed here differs slightly from that followed by the Ohio bank in the Rieger case in which assignment could be made by endorsement of the certificate is not significant.

The 1940 payments were clearly made in retirement of these certificates. At that time the face value of the indebtedness was repaid. A further payment made in 1942 represented interest and was treated by the plaintiff as ordinary income.

Judge Martin, speaking for the court in the Rieger case, held: "The purpose in the enactment of Section 117 * * * was manifestly to differentiate between the income of a taxpayer received on the one hand from his personal service, profession, business or trade, or from interest, dividends, rents and the like, as defined in Section 22 of the Act * * * and, on the other hand, from gains or losses accruing from investment of his capital assets, as defined in Section 117 of the Act. It is apparent that in enacting Section 117 (f) Congress intended to broaden this differentiation to embrace the retirement of the class of securities enumerated in that section." 139 F.2d at page 621.

██ Upon the record, there can be no doubt that the decedent and the taxpayer intended to, and actually did, invest capital in corporate certificates of indebtedness. A sale is not necessary to show investment. A market is enough. The decision to buy is not different from the decision to keep money in one asset rather than investing it in another, as long as a market for the original asset is apparent.

Both the technical and logical requirements set forth in the Rieger case are present in the case now before the court, and the decision of the Sixth Circuit is a mandate upon this court.

██ Although he had opportunity daily to sell his claim, the decedent and the taxpayer preferred to keep the money invested in the certificates of the First National Bank—Detroit. On decedent's death the certificates were valued at their market value for estate tax purposes. They represented a capital investment, and the realization of gain in excess of the market value at the time of death bears none of the characteristics of ordinary income. It was clearly a return of invested capital to be treated as a capital gain to the estate.[1]

Plaintiff may have judgment in an amount to be computed in accordance with a stipulation of the parties.

1. For an enlightening discussion of the philosophies, the legal concepts, as well as the economic nature of capital gains and losses see Seltzer, *The Nature and* *Tax Treatment of Capital Gains and Losses.* (National Bureau of Economic Research, Inc., 1951).