Frank C. TOYE, John L. Toye and Robert Toye, Jr., Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. 5942.

United States District Court
E. D. Louisiana,
New Orleans Division.

Nov. 22, 1957.

124

Deutsch, Kerrigan & Stiles, Rene Himel, New Orleans, La., for plaintiffs.

M. Hepburn Many, New Orleans, La., Lester L. Gibson, Washington, D. C., for defendant.

J. SKELLY WRIGHT, District Judge.

This case presents the question whether income received from liquidation of a frozen bank deposit in the hands of a transferee is subject to capital gains treatment under Section 117(f) [1] of the Revenue Act of 1934.

In September, 1947, the taxpayer purchased a frozen bank deposit in the Hibernia Bank and Trust Company in Liquidation. To consummate the sale, it was necessary under the bank rules for the original depositor and transferor to execute a form letter before two witnesses, addressed to the bank authorizing the transfer on its books. The letter was also required to be signed by the taxpayer-transferee. Upon receipt of this authority, the liquidating official acting for the bank recorded the transfer on the books of the bank and issued to the taxpayer-transferee a letter giving formal notice of the transfer and stating the amount of the frozen deposit. Although there was considerable trading in these frozen deposit claims in the New Orleans security market and elsewhere, this procedure was the only means by which they were transferred on the books of the bank.

In 1951 the taxpayer received from the bank $9,482.79 on account of this claim, $8,750.02 of which the taxpayer reported as a capital gain in that year. The Commissioner of Internal Revenue assessed a deficiency on the theory that this income was ordinary income, not a capital gain. The taxpayer paid the deficiency under protest and brought this suit for refund.

Prior to the passage of Section 117(f) of the Internal Revenue Act of 1934, it had been held that the phrase "sale or exchange" of capital assets, requiring capital gain or loss treatment, employed in earlier revenue acts was not descriptive of the redemption or retirement of corporate securities.[2] Hence,

---

1. Section 117(f) reads:
    "For the purposes of this chapter, amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form, shall be considered as amounts received in exchange therefor." 26 U.S.C. § 117(f), 1946 Ed.

2. Fairbanks v. United States, 306 U.S. 436, 59 S.Ct. 607, 83 L.Ed. 855; Watson v. Commissioner of Internal Revenue, 27 B.T.A. 463.

gain from such a transaction was to be treated as ordinary income and any loss so arising could be deducted from gross income as a bad debt.[3] In the early 1930's, many taxpayers suffered substantial losses on the retirement of corporate securities. By treating these losses as bad debt deductions, these taxpayers were able to set off the full amount of the losses against taxable ordinary income from other sources. The intent of Congress in passing Section 117(f) of the Revenue Act of 1934 was to insure that losses from such transactions would be subject to the capital loss limitations of Section 117.[4] Thus Section 117(f) provides that, for the purposes of the title dealing with capital gains and losses, "amounts received by the holder upon the retirement" of corporate securities described in that section shall be considered "as amounts received in exchange therefor." In other words, such amounts will be accorded capital gain and loss treatment.

It must be determined here, therefore, whether the retirement or redemption of frozen bank deposits comes within the orbit of Section 117(f). Is the description of corporate securities in that section sufficiently broad to cover the letter issued to the taxpayer showing the transfer of the frozen deposit on the books of the bank? Stated more specifically, was it an "evidence of indebtedness * * * in registered form" as required by the statute?

█ The Government contends that Section 117(f) was never intended by Congress to include frozen deposit claims since such obligations are not ejusdem generis with the bonds, debentures and notes therein specifically mentioned. In

effect, the Government would restrict the scope of Section 117(f) literally to "bonds, debentures, notes, or certificates" and treat "other evidences of indebtedness" as surplusage.

A similar attempt to restrict the language of Section 117(f) was made in McClain v. Commissioner of Internal Revenue, supra, where it was argued that the word "retirement" did not include an involuntary redemption of bonds as part of a corporate reorganization. The Court held that "The statute does not use the word in an unusual or artificial sense. In common understanding and according to dictionary definition the word 'retirement' is broader in scope than 'redemption'; is not, as contended, synonymous with the latter, but includes it. Nothing in the legislative history of the provision requires us to attribute to the term used a meaning narrower than its accepted meaning in common speech."[5] Similarly, there is nothing in the statute or its legislative history[6] to suggest that the broad term "other evidences of indebtedness" should be given a restricted meaning or be treated as unnecessary verbiage. Section 117(f) was enacted as a revenue raising measure, hence its extensive coverage. This Court should not now attempt to restrict its coverage because the application of its broad language to the evidence of indebtedness in suit would effect a tax saving for the taxpayer rather than revenue for the Government.[7]

██ The Government also contends that the taxpayer's letter evidencing his frozen deposit claim was not "in registered form" in that it was not a formally printed, serially numbered certificate is-

3. McClain v. Commissioner of Internal Revenue, 311 U.S. 527, 61 S.Ct. 373, 85 L.Ed. 319.

4. McClain v. Commissioner of Internal Revenue, supra. See Hendricks, Federal Income Tax: Capital Gains and Losses, 49 Harv.L.Rev. 262.

5. McClain v. Commissioner of Internal Revenue, supra, 311 U.S. at page 530, 61 S.Ct. at page 375.

6. Report of Ways and Means Committee, H.R.Rep. No. 704, 73d Congress, 2d Session, P. 31 (1939-1 Cum.Bull. (Part 2) 554, 577).

7. The phrase "other evidences of indebtedness" in Section 117(f) has been held to include frozen deposit claims in Rieger v. Commissioner of Internal Revenue, 6 Cir., 139 F.2d 618, and Vance v. Kavanagh, D.C., 100 F.Supp. 899.

sued simultaneously with the other certificates in the series. The bank's procedure in the present case was to issue individual letters as evidence of claims to frozen deposits whenever a claim was transferred, and these letters were not serially numbered.

It is not quite clear what the Government understands by the phrase "in registered form" but the term has a specific meaning in the ordinary parlance of the securities market. It refers not to the minutiae of printed form but to a procedure for transfer: the obligation and the name of the owner are registered on the issuer's books, and a transfer can only be consummated by a new registration in the name of the transferee pursuant to instructions from the owner-transferor.[8] Registered obligations originated in the market as an alternative to bearer paper which could be transferred by delivery. The purpose of the registration procedure is to protect the registered owner in the event of loss or theft of the certificate. The statutory phrase "with interest coupons or in registered form" clearly refers to and contrasts these two types of security and their alternative methods of transfer.[9]

Thus the evidence of indebtedness in suit, the letter issued by the bank, is "in registered form." It is not a printed certificate, serially numbered. But it is evidence of indebtedness showing that the holder thereof is the registered owner of the frozen deposit, that transfer of the obligation can only be effected by a change of registration on the books of the bank and not by the mere endorsement or delivery of the letter to a transferee. Inasmuch as the bank here by its rules invariably required this registration procedure before recognizing transfers of frozen deposit claims and since the letter in suit was but evidence of the completed regis-

tration, it was "in registered form" as required by Section 117(f).

It is suggested that if the taxpayer here is allowed capital gains treatment on the income from the "sale or exchange" of a frozen bank deposit, then the original depositor who does not transfer his claim will be denied a bad debt deduction for any loss on his deposit. But that case is not before the Court and, consequently, no indication of its disposition is required.[10]

Judgment for plaintiff.

---

8. 6A Fletcher, Corporations § 2643 (1950); Steffen and Russell, Registered Bonds and Negotiability, 47 Harv.L.Rev. 741.

9. Gerard v. Helvering, 2 Cir., 120 F.2d 235.

10. But see Vance v. Kavanagh, supra.