B. A. CARPENTER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 30631.    Promulgated June 15, 1953.

*Claude L. Gray, Esq., Dorothea Watson, Esq., Roe H. Wilkins, Esq., Mac Asbill, Esq.,* and *William A. Sutherland, Esq.,* for the petitioner. *Ralph V. Bradbury, Jr., Esq.,* for the respondent.

604

606

OPINION.

Tietjens, *Judge:* The Commissioner insists that the revolving fund certificates should be taxable at their face amount regardless of whether or not they had any fair market value at the time of their issuance. He argues that the Cooperative was under an obligation to distribute patronage dividends either in cash or certificates; that the petitioner by becoming a member voluntarily assented to this arrangement and pursuant thereto, when the directors determined to pay such dividends in certificates the petitioner should be treated as if he had actually received the dividends in cash and reinvested the cash in the Cooperative.

Further, the Commissioner claims that by Bureau ruling and the decisions of this Court, cooperatives have been permitted to exclude the full amount of such allocated profits from income under conditions such as exist in this case. He continues, as a corollary, that he has included in the taxable income of the member the full amount of allocated profits evidenced by certificates in the same year the exclusion is allowed. He maintains that the decisions of this Court have supported this result, but rejected the theory, my holding such income taxable to the members, but on the theory that it was received at fair market value. He concludes that "Consistency and protection of the revenue support the Bureau contention that such proceeds are properly taxable at full face value." In summary, "It is the Commis-

sioner's premise that the amounts represented by the certificate were in effect received and reinvested in the capital of the cooperative, since the amounts were used in the manner the petitioner had elected. In any event, the amounts were 'constructively received' and reinvested by the petitioner."

The Commissioner cites *United Cooperatives, Inc.*, 4 T. C. 93, and *Colony Farms Cooperative Dairy, Inc.*, 17 T. C. 688, as cases illustrative of the proposition that the issuance of certificates or the use of earned margins as capital with the permission of the member is excludible from income by the cooperative when the cooperative is the petitioner here. When the member is the petitioner the cases cited are *George Bradshaw*, 14 T. C. 162; *Harbor Plywood Corporation*, 14 T. C. 158; *P. Phillips*, 17 T. C. 1027; *Estate of Wallace Caswell*, 17 T. C. 1190; and *William A. Joplin, Jr.*, 17 T. C. 1526.

The petitioner's position simply is that he received no taxable income by virtue of the issuance of the revolving fund certificates under any theory.

Little would be gained by discussing the cases involving exclusion of patronage dividends by cooperatives. Whatever may be the virtues of consistency, it cannot always be attained. The cooperative and its patrons are different entities and we do not think it necessarily follows that what is excludible from the income of the cooperative, whether the cooperative be taxable or tax exempt, automatically becomes income to the member. See *William A. Joplin, Jr.*, *supra*.

We confine ourselves to the problem before us. Is the petitioner here taxable on any amount represented by the certificates issued by the Cooperative? The import of the decisions is that the member is not taxable unless the certificates have fair market value.

*Harbor Plywood Corporation*, *supra*, and *George Bradshaw*, *supra*, are not too helpful. Both involved the time of accrual—the *Plywood* case of credit memoranda issued to members where the income had been earned by the cooperative and would have been paid to the member but for the contingency of renegotiation, and the *Bradshaw* case of notes issued by a purchasing cooperative as patronage refunds. In our opinion, neither case has a direct bearing on the present question.

In *Estate of Wallace Caswell*, *supra*, the cooperative, a tax-exempt cooperative, distributed interest-bearing certificates as well as cash to patrons. The Commissioner contended that the patron had received property in addition to cash under section 111 (b) and had received and realized income to the extent of the fair market value of the certificates. We upheld this contention and found not only that the certificates had fair market value, but that "the record gives no leeway for saying that such fair market value was less than face."

*William A. Joplin, Jr., supra,* was concerned with $25 par value preferred stock issued by the cooperative of a conceded fair market value of half its par value. Here again the decision was for the Commissioner, the Court finding, however, that the fair market value of the stock was the equivalent of its par value.

That phase of *P. Phillips, supra,* which bears on our question involved a taxable cooperative which voluntarily issued certificates to its members much like the certificates here, except for the voluntary feature. We stated, at page 1029:

Dr. P. Phillips Cooperative voluntarily issued revolving fund certificates against the amounts retained from marketing operations. Those certificates had no fair market value and did not represent income to the recipients on that basis. The Cooperative never made the funds themselves subject to the demand of any member so that constructive receipt might apply. The funds belonged to and were retained by the Cooperative. They were not income of the members for 1946. Furthermore, if a member ever receives any cash or thing of value in lieu of the certificates, that will represent an additional "amount realized" from the sale of his 1946 crop which will be taken into income at that later date if it represents unreported profit. The Commissioner has advanced no sound reason for including these amounts in the income of the petitioners for 1946.

The *Caswell, Joplin,* and *Phillips* cases suggest that the patronage dividends are to be taxed or not taxed depending on whether or not they have a fair market value. We have found that the certificates with which we are dealing had no fair market value. Accordingly, they would not be taxable to the petitioner.

The Commissioner, however, brushes fair market value aside and seems to stand on the theory either of "constructive receipt" or "assignment of income," though at the same time stating that the theories on which he proceeds are immaterial. As in *Phillips,* so here, we do not think the Commissioner has advanced any sound reason for including any amount represented by the revolving fund certificates in the petitioner's income. The petitioner never had any real dominion or control over the funds represented by the certificates. The decision to retain the funds in the business rested solely with the directors. The certificates themselves had no fair market value and we do not see that whether or not the Cooperative was obligated to issue such certificates adds anything significant to the situation. We decide for the petitioner on the first issue.

On the issue involving the Pasco stock, the burden of showing the error of the Commissioner's determination that the stock constituted taxable income in the year ended February 28, 1949, rather than the succeeding year is on the petitioner. This burden, the petitioner contends, has been met by proving that he was on the cash basis, that he had no knowledge of the contract to purchase the Pasco stock, and

that he actually received the stock certificate in the year in which he reported it.

The facts do not show the exact date on which the stock purchase was consummated by the parties, but it evidently was previous to the taxable year in which the petitioner reported the income since the transaction .was entered into during the 1947–48 growing season. It is clear that the stock was not purchased by the Cooperative for itself, but was purchased on behalf of the members including the petitioner. The petitioner's agreement as a member provided that any contract between the Cooperative and any agency utilized by the Cooperative shall be a part of the member's agreement and binding on the parties. The contract between Pasco and the Cooperative which made provision for the stock purchase seems to us to have been such a contract. The intent of the Cooperative, as shown by the facts, was that the Pasco stock was to be held in an "escrow account for its members." This means to us that upon the purchase being made, the petitioner immediately became entitled to his proportionate share of the Pasco stock. That his exact share was not immediately determined is not significant—that was merely a matter of arithmetical computation.

The petitioner's actual knowledge of the transaction would not seem to be material. The contract with Pasco for the stock purchase was obviously for the benefit of the petitioner and the other members of the Cooperative and the Cooperative, pursuant to its original intent, was to hold the stock for the members, not for itself. In such a situation the cooperative is a conduit for passing the stock on to its members. Cf. *Dr. P. Phillips Cooperative*, 17 T. C. 1002. And it seems fair to say that the Cooperative, in view of the provisions of the membership agreement referred to above, was an agent of the petitioner and the other members in making the stock purchase. It was not necessary for the Cooperative to obtain any ratification by its members before the contract with Pasco became binding. No contention is made to that effect or that the Cooperative exceeded its authority in making the contract.

As we view the transaction, the petitioner's right to the stock ripened when the stock purchase was made. It did not depend upon actual issuance of the certificates by Pasco. Ownership of stock is not determined by the formality of registering and delivering stock certificates. *W. F. Marsh*, 12 T. C. 1083; *Scientific Instrument Co.*, 17 T. C. 1253. The petitioner's right became fixed at the time of the contract, which was before the year in which the stock certificate was actually delivered to the petitioner and returned as income by him. In effect, the entire transaction amounted to an appropriation for the proportionate benefit of each member of $300,000 of the earnings of the Cooperative at the time the stock purchase was made.

610

In these circumstances we think the petitioner has not met his burden of showing the Commissioner's determination to have been erroneous, and we hold for the Commissioner on this issue.

Our holding on the first issue makes it unnecessary for us to decide the statute of limitations question.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

TURNER and BRUCE, *JJ.*, concur in the result.

---

ARUNDELL, *J.*, dissenting: I would decide the second issue in this case for the taxpayer. He reports his income on a cash receipts basis and the shares of stock were returned at full value by him in the year in which he received the shares. He not only did not receive the shares in the year in which they are being taxed but it was not known what shares would come to him within that year; nor had he even heard of the transaction within the year. It was not until the year following the taxable year in question that the Pasco Company was given instructions to issue the shares to the members. Before a cash basis taxpayer may be charged with the receipt of income he must receive cash or property having a fair market value, or such cash or property must be unqualifiedly subject to his demand. Regulations 111, section 29.115–1. The taxpayer in this case had no right to take possession of these Pasco shares in the year in which the tax is imposed, nor would a demand for the shares have been enforceable.

In my opinion, the way the taxpayer reported this income was the normal way taxpayers would follow and to attempt to upset this by the adoption of some theory of agency I think is a mistake.

VAN FOSSAN, HARRON, JOHNSON, and WITHEY, *JJ.*, agree with this dissent.