**Richard T. GRAHAM, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 357, Docket 27361.**

United States Court of Appeals
Second Circuit.

Argued May 9, 1962.

Decided May 29, 1962.

George R. Wagner, Brooklyn, for petitioner.

Alec A. Pandaleon, Attorney, Department of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Harry Marselli, Attorneys, Department of Justice, Washington, D. C.), for respondent.

Before CLARK, KAUFMAN and HAYS, Circuit Judges.

KAUFMAN, Circuit Judge.

This is a petition for review of a decision rendered by the Tax Court, Atkins, J.,[1] which held that payments made pursuant to an award of the Mixed Claims Commission, United States and Germany, did not qualify for capital gains treatment under Section 1232 of the Internal Revenue Code of 1954, 26 U.S.C. § 1232. Since Graham, the taxpayer, reported payments made in 1954 and 1955 on his share of an award as long-term capital gains, the Tax Court upheld the Commissioner's determination of deficiencies in income tax for those years amounting to $803.87 and $839.77 respectively. We affirm that decision.

The United States and Germany entered into a treaty in 1921 whereby Germany agreed to indemnify this country and its nationals for losses and damage sustained in World War I. In the following year the two nations established a Mixed Claims Commission for the purpose of adjudicating Germany's liability under the 1921 treaty and the amount to be paid on valid claims. It was further agreed that awards made by the Commission would be accepted as final and binding. In 1928 and 1933 Congress fashioned a system by which our government

1. Graham v. C. I. R., 36 T.C. 612 (1961).

could facilitate payment of those awards. The Secretary of State was instructed to certify them to the Secretary of the Treasury. The Treasury Department would then make payments out of a special German Deposit Account in accordance with such regulations as it found necessary to prescribe in order to assure that they were made to persons granted awards by the Commission or their assignees.

Meanwhile, on June 23, 1930, the United States and Germany concluded another treaty limiting Germany's total obligation on past and future awards to fixed annual payments, which would be evidenced by German bonds maturing serially on a semi-annual basis through 1981. In fact no payments were made on account of any of these bonds maturing after September 30, 1931. However, the award holders did receive some payments during the period 1941–1952 from funds made available from the sale of German assets controlled by the Alien Property Custodian; and on February 27, 1953, the Federal Republic of Germany agreed to pay a negotiated sum in settlement of the remaining obligation for Mixed Claims Commission awards. As evidence of the new debt bonds were issued by Germany, payable to the United States in 26 annual installments through 1978; the bonds issued to the United States under the 1930 agreement were cancelled and returned.[2]

In 1940, at a judicial sale, Graham and two associates purchased an 85% interest in an award made by the Mixed Claims Commission in favor of the Lucy Manufacturing Company (prior to 1931), for the sum of $10. Although they received approximately $20,000. in payments on this award in the period 1941–52, the obligation was still "worth" $55,479.05 and interest had accrued in the amount of $77,126.84. In 1954 the Bureau of Accounts, United States Treasury De-

partment, credited $3,663.52 to the 85% interest in the Lucy Manufacturing Company award, less a one-half of one per cent statutory charge for expenses; and again, in 1955, there was a further credit of $4,521.42, less the statutory charge. Graham's share of these payments was $1,215.07 in 1954 and $1,499.60 in 1955. As we have already noted, he reported the payments on his Federal income tax returns for those taxable years as long-term capital gains.

Unless petitioner correctly asserts that Section 1232 of the 1954 Code comprehends payments made pursuant to the Mixed Claim Commission's awards, there can be no doubt that the Commissioner properly determined that the payments made to him constitute ordinary income. It is well settled that the payment of an obligation cannot be a "sale or exchange" of a capital asset, Fairbanks v. U. S., 306 U.S. 436, 59 S.Ct. 607, 83 L.Ed. 855 (1939); Bingham v. Commissioner, 105 F.2d 971 (2d Cir. 1939); Sovik v. Shaughnessy, 92 F.Supp. 202 (S.D.N.Y. 1950), aff'd, 191 F.2d 895 (2d Cir. 1951), which could result in capital gain. Section 1232, derived from Section 117(f) of the 1939 Code, is a carefully limited exception to that rule. In this provision Congress has directed that amounts received upon retirement of certain capital assets are to be considered as amounts received in exchange therefor, and as giving rise to capital gain (or loss). See 3B, Mertens, Federal Income Taxation, § 22.94 (1958). The section is expressly limited to "bonds, debentures, notes, or certificates or other evidences of indebtedness" issued by a "corporation, or government or political subdivision thereof." Moreover, the 1954 Code retains the requirement of its 1939 predecessor that in order to qualify for capital gains treatment the bonds or other specified evidences of indebtedness must bear interest coupons or be "in registered form"

---

2. The voluminous findings made by the Tax Court, from which this summary is taken, are set out at pp. 613–615 of its opinion, cited in the previous footnote. Although we think it unnecessary to re-state them at length, the omission implies no disagreement. Many of the facts are stipulated or are matters of public record and not in dispute.

if they were issued before January 1, 1955. 26 U.S.C. § 1232.

The Commissioner argues that Section 1232 contemplates a close category of obligations, i. e., that "other evidences of indebtedness" refers to obligations similar to the four classes specifically denominated, and concludes the Mixed Claims Commission award in question is dissimilar.[3] See H.Rep.No.704, 73d Cong., 2d Sess., p. 31, which accompanied the provision (Section 117(f)) originally enacted in 1934 anticipating Section 1232 which states: "Subsection (f) provides that amounts received upon the retirement of corporate bonds and *similar* evidences of indebtedness shall be considered as amounts received in exchange therefor." (Italics added.) However, we find it unnecessary to pass on this interpretation of the statute, or to decide whether the award is "similar" if this interpretation is correct. It is perfectly clear that, in any event, the awards were not "issued" by a "government or political subdivision thereof" as required. We agree with the Commissioner and the Tax Court that the Mixed Claims Commission was no more a political subdivision of Germany than it was of the United States.

Moreover, the awards do not comply with the additional requirement that an obligation issued before January 1, 1955 have interest coupons attached or be in registered form. It is stipulated that there are no attached interest coupons. To be in "registered form" the obligation must be transferable only by entry on the books or records of the debtor or its agent. Gerard v. Helvering, 120 F.2d 235 (2d Cir. 1941). Furthermore, as this Court held in Gerard, since

> "the purpose is to protect the holder by making invalid unregistered transfers, * * * the bond always so provides upon its face." Id., 236.

The awards of the Mixed Claims Commission were not registered in books kept by the debtor (Germany); and the Tax Court was certainly correct in rejecting any argument that the United States government, specifically the Treasury Department, was an agent of Germany for this purpose. Indeed, it is far more reasonable to consider the Treasury Department a collection and disbursing agent for the awardholders. Even if this were not so, there is no inscription on the awards which indicates non-transferability, and the petitioner does not suggest that the awards are not in fact freely transferable. The Treasury Department regulation requiring proof of ownership is merely an administrative measure intended to assure that payments are made only to bona fide holders of awards or owners of interests therein. It does not purport to affect transferability of title and petitioner does not argue that the regulations actually affect it. Such bookkeeping practices do not satisfy the "registered form" requirement of the statute. Accord, Gerard v. Helvering, supra; Lamm v. Commissioner, 192 F.2d 1017 (9th Cir., 1951) (per curiam), affirming 15 T.C. 305 (1950).

Petitioner would have us overlook the manifest inapplicability of Section 1232 to a Mixed Claims Commission *award* by contending that the *bonds* issued by Germany to the United States government in 1953 fall within its terms. Since the bonds were not in registered form, i. e., they bear no inscription of non-transferability etc., and admittedly they have no attached interest coupons, we believe this contention is without substance. In addition, the payments made by the Treasury Department were not in retirement of those bonds, but in reduction of the amounts remaining due on the Lucy Manufacturing Co. award. And the bonds were payable to the United States of America and not to the petitioner; they evidence no right to ownership by awardholders. In determining whether such awardholders may claim the benefits of this limited tax provision, we are inclined to consider it immaterial that

---

3. "The award was not created in exercise of Germany's borrowing power; it arose from an adjudication of the Mixed Claims Commission, and represented liability for property loss and damage" (Br. 10).

funds contemplated by the bonds may be used to make payments on the awards.

The Internal Revenue Code is not a piece of social legislation evincing a purpose which requires broad construction in order to lend substance to any colorable claim which may be urged upon a reviewing court. The capital gains provisions in particular, which permit highly favorable tax treatment, are not to be extended beyond the clear intent of the statute nor given some strange or artificial meaning. Cf. Miller v. Commissioner, 299 F.2d 706 (2d Cir., 1962).

Affirmed.