## GREENVINE CORPORATION, A CALIFORNIA CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 88771.   Filed September 6, 1963.

*Charles E. McClung*, for the petitioner.
*Donald D. Winn*, for the respondent.

DAWSON, *Judge:* Respondent determined deficiencies in the income tax of petitioner as follows:

| Fiscal year ended: | *Deficiency* |
| --- | --- |
| June 30, 1956 | $4,770.39 |
| June 30, 1957 | 2,611.00 |
| June 30, 1958 | 2,244.60 |

The only issue is whether the "revolution" of revolving fund credits held by a purchaser for value constitutes a "sale or exchange" within the capital gains provisions of the Internal Revenue Code of 1954.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Greenvine Corp. (hereinafter referred to as petitioner), which is privately owned, was incorporated under the laws of the State of California on July 16, 1948.   Its principal business activities are rentals, storage, and hauling.   Petitioner filed its Federal corporate income tax returns for the fiscal years ended June 30, 1956, June 30, 1957, and June 30, 1958, with the district director of internal revenue, Los Angeles, Calif.

Exchange Lemon Products Co. (hereinafter referred to as ELPC) was a cooperative marketing association existing pursuant to the provisions of chapter 4, division 6, Agricultural Code of the State of California.   Since its inception in 1915, the principal purpose of ELPC was to discover, develop, produce, and market lemon products created as a byproduct from the normal marketing of fresh lemons.

Its products include such items as frozen lemon concentrate, pectin, citric acid, lemon oils, and lemon juice products. Effective October 31, 1958, the activities of ELPC were taken over by Sunkist Growers, Inc.

In accordance with established industry practice, ELPC utilized the revolving fund plan for acquisition of funds to operate its business. The fund was acquired either by assessment against the members or by the retention of a specific sum from the proceeds of the members' fruit processed through the company. As additional funds are acquired from members and patrons, either by assessment or retention, so that the total amount in the fund exceeds the requirements of the company, or a fixed dollar amount, the company causes the fund to "revolve" by paying the holders of the oldest revolving fund credits the face amount of their credits.

From the date of its incorporation in 1915 until the filing of the Fourth Amended Articles of Incorporation on December 5, 1953, ELPC was a nonprofit corporation having capital stock which was sold and issued in accordance with agreements entitled "Agreement Subscribing for Stock and Creating Exchange By-Products Company Revolving Fund." Stock was represented by stock certificates maintained in a capital stock ledger and on stock priority lists.

In accordance with the reorganization of ELPC under chapter 4, division 6, Agricultural Code of the State of California, the articles of incorporation provided for the creation of a single "Revolving Fund," and further provided that the cooperative is organized without capital stock. The former stock of the members, as well as any credits in the former operating capital fund, were converted into and became credits in the newly established revolving fund. Such credits retained their value and priority of payment based upon the year of their original issue, notwithstanding the conversion. ELPC discontinued the use of such business records as stock certificates, stock ledgers, and stock priority lists.

Article Tenth of the articles of incorporation of ELPC, as amended December 9, 1953, provides as follows:

TENTH: The property rights and interests of the members shall be unequal. The property rights and interests of any member at any time shall be such part of the entire property rights and interests as the amount of revolving fund and other allocated reserve credits standing upon the books of the Association in the name of such member at that time bears to all such credits on said books in the name of all members at such time. Provided, however, that said revolving fund or allocated reserve credits shall not be deemed to evidence, create or establish any property rights or interests, as such terms are herein used, but such credits shall be deemed to evidence an indebtedness of the Association payable only as provided in the by-laws.

Section 8.01 of the bylaws sets forth the purpose of the revolving fund as follows:

A fund, to be known as the "revolving fund" is hereby created for the purpose of furnishing an equitable basis, in accordance with established industry practice, for acquiring capital to operate the business of the Association with

contributions related to shipments of citrus fruit by the members and other patrons.

Section 8.11 of the bylaws describes the nature of the revolving fund credits as follows:

Revolving fund credits * * * shall be deemed due evidence of indebtedness of the Association to the respective persons to whom credited, to be paid solely upon the conditions and at the time and times herein provided. No interest shall be payable on or in respect of said revolving fund credits.

Other provisions of the bylaws relating to the revolving fund credits may be summarized as follows:

1. The revolving fund credits entitled the member to one vote for each $100 of revolving fund credits outstanding on the books of ELPC. However, the holder of such revolving fund credits had no voting rights unless such holder was a member of ELPC.

2. Not later than eight and one-half (8½ months after the close of each fiscal year, ELPC was required to furnish each holder of revolving fund credits with a statement showing the dollar amount of revolving fund credits standing on the books of the cooperative in the name of each patron and the amount thereof which accrued during such fiscal year. (The statements provided on their face that they were nonnegotiable.)

3. Revolving fund credits could be assigned or transferred at any time by the execution of a written assignment on a form provided by the cooperative and the delivery thereof to the secretary of the cooperative. No transfer was complete until entered upon the books of the cooperative. (ELPC kept a register of all the holders of revolving fund credits.)

4. In the event ELPC sustained a substantial loss, the board of directors could, in its discretion, charge any portion of that loss to current operating expenses, to revolving fund credits for the fiscal year in which the loss was incurred, or pro rata to all revolving fund credits for all years.

5. In the event of dissolution of the cooperative, all of the indebtedness represented by revolving fund credits was to be deemed due but not payable until all other indebtedness of the cooperative was paid or adequately provided for. Payment of the revolving fund credits, without regard to priority of revolution, was to take priority over payment of amounts due under other allocated reserves.

6. Any residue, in the event of dissolution, would be distributed to those who were members of ELPC in proportion to the amount of their revolving fund credits at the time of dissolution. No holder of revolving fund credits was eligible to participate in such a residual distribution unless such holder was a member of ELPC at the time of dissolution.

Section 8.21 of the bylaws provides for the revolution of the fund as follows:

8.21 REVOLUTION OF FUND. When the aggregate of all outstanding unpaid revolving fund credits equals ten million dollars ($10,000,000) the board of directors shall commence to revolve funds out as follows. At least once a year, as additional funds are made available through assessments or deductions, the amount of said funds in excess of ten million dollars ($10,000,000) shall be paid out to retire the oldest unpaid revolving fund credits. In determining the said oldest credits, all credits from the same fiscal year shall have the same priority and if there are not sufficient monies available for all credits for any fiscal year, the pro-rata payment shall be made against all of the credits of such fiscal year. Nothing herein contained shall be construed to prohibit the board of directors from revolving out such amounts as it may deem advisable from time to time, notwithstanding that said fund may not have reached said maximum limit.

The Culbertson Lemon Association, a corporation (hereinafter referred to as Culbertson), operated a lemon packing house in Ventura County, Calif., and until September 1954, was a member of ELPC. As a result of such membership, Culbertson acquired certain revolving fund credits in ELPC. At all times material herein, ELPC and Culbertson were tax-exempt organizations under the provisions of section 101(12) of the Internal Revenue Code of 1939 or section 521 of the 1954 Code.

On September 21, 1953, the petitioner purchased from Culbertson certain revolving fund credits which had been issued to Culbertson by ELPC. These revolving fund credits had a face value of $68,-419.33. Petitioner paid Culbertson the sum of $34,965.52 in cash for such credits.

During the years in issue, petitioner realized gain in the following amounts on the revolution of such revolving fund credits:

| Fiscal year ended— | Face amount of credits | Cost to petitioner | Gain on revolution |
| --- | --- | --- | --- |
| June 30, 1956 | $23,657.04 | $12,089.87 | $11,567.17 |
| June 30, 1957 | 6,997.25 | 3,575.93 | 3,421.32 |
| June 30, 1958 | 16,003.96 | 8,178.79 | 7,825.17 |

Petitioner was not a member of ELPC. The revolving fund credits issued by ELPC and purchased by petitioner were personal property having characteristics of both debt and equity, which were capital assets in its hands and which were held by petitioner for more than 6 months prior to their revolution.

In its Federal income tax return for the fiscal years 1956, 1957, and 1958, petitioner reported the gains set forth above as long-term capital gains. In his notice of deficiency respondent determined that such gains represented ordinary income.

OPINION

The issue presented for decision is whether petitioner is entitled to capital gains treatment with respect to gains realized from the revolution of revolving fund credits issued by ELPC, an agricultural mar-

keting cooperative. Respondent has stipulated that the revolving fund credits are capital assets in the hands of petitioner held for more than 6 months. Respondent's case is grounded upon the theory that the normal revolution of the revolving fund credits does not constitute a "sale or exchange" within the capital gains provisions of the Internal Revenue Code of 1954.[1]

Petitioner contends that the credits are either (1) essentially equivalent to the capital stock of ELPC, the reacquisition thereof by the cooperative constituting an exchange under section 302(a) of the Internal Revenue Code of 1954,[2] or (2) evidences of indebtedness of ELPC, the retirement thereof by the cooperative constituting an exchange under section 1232(a)(1)[3][4]. Respondent, on the other hand, argues that the credits do not have the basic characteristics of either stock or indebtedness and that they "constitute nothing more than conditional and contingent credits" the collection of which is not a sale or exchange.

While the question of whether the revolution of revolving fund credits constitutes a sale or exchange appears to be one of first impression, the taxability of revolving fund certificates at the time of their issuance is no new subject of litigation. The Commissioner initially took the position that the certificates were income to the recipients in the face amount thereof when issued on the theory that the patron had constructively received the money represented by the credit and reinvested in the cooperative. The Tax Court, however, upheld the more realistic view that such payments, under definitely described conditions, did not meet the test of realization that determines taxable income. See *B. A. Carpenter*, 20 T.C. 603 (1953), affd. 219 F. 2d 635 (C.A. 5, 1955). We were not there concerned with the character of the interests which the credits represented. Instead, the

---

[1] All Code references in this opinion are to the Internal Revenue Code of 1954.

[2] SEC. 302. DISTRIBUTIONS IN REDEMPTION OF STOCK.

(a) GENERAL RULE.—If a corporation redeems its stock (within the meaning of section 317(b)), and if paragraph (1), (2), (3), or (4) of subsection (b) applies, such redemption shall be treated as a distribution in part or full payment in exchange for the stock.

[3] SEC. 1232. BONDS AND OTHER EVIDENCES OF INDEBTEDNESS.

(a) GENERAL RULE.—For purposes of this subtitle, in the case of bonds, debentures, notes, or certificates or other evidences of indebtedness, which are capital assets in the hands of the taxpayer, and which are issued by any corporation, or government or political subdivision thereof—

(1) RETIREMENT.—Amounts received by the holder on retirement of such bonds or other evidences of indebtedness shall be considered as amounts received in exchange therefor (except that in the case of bonds or other evidences of indebtedness issued before January 1, 1955, this paragraph shall apply only to those issued with interest coupons or in registered form, or to those in such form on March 1, 1954).

[4] Respondent elected on brief not to argue whether the credits are in registered form if we should find the credits to be evidences of indebtedness. Notwithstanding respondent's concession, the credits would appear to be in registered form under the authority of *Graham* v. *Commissioner*, 304 F. 2d 707 (C.A. 2, 1962), affirming 36 T.C. 612 (1961); *Gerard* v. *Helvering*, 120 F. 2d 235 (C.A. 2, 1941), affirming 40 B.T.A. 64 (1939); *Victor A. Miller*, 32 T.C. 954 (1959), reversed on another issue 285 F. 2d 843 (C.A. 10, 1960); *Toye* v. *United States*, 157 F. Supp. 123 (E.D. La. 1957); and *Vance* v. *Kavanagh*, 100 F. Supp. 899 (E.D. Mich. 1951).

question was whether a cash basis taxpayer had received anything of a determinative value which should be included in gross income. It was held that the certificates had no ascertainable market value in the taxpayer's hand and, therefore, that they were not taxable to the taxpayer when received. Cf. *Long Poultry Farms* v. *Commissioner*, 249 F. 2d 726 (C.A. 4, 1957), reversing 27 T.C. 985 (1957), where the Court of Appeals, in holding that an accrual basis taxpayer did not realize income on the receipt of revolving fund credits, did not definitely characterize such credits.

The revolving fund method of financing cooperatives utilizes a hybrid-type security having certain characteristics of both debt and equity. The more fixed and rigid the obligation to pay the more clearly the security resembles debt, and the more subordinate and unsecure the obligation the more the security resembles stock or equity. That the security is susceptible to being classified as both debt and equity does not mean that a third creature *sui generis* is created.

It is evident that the revolving fund credits here involved possess the basic characteristics of both equity and debt. For example, the credits are like equity in that they are subject to the risk of the enterprise. The bylaws provide that in the event of a substantial loss the board of directors can charge any or all of such loss against the revolving fund credits. ELPC has no other risk capital.[5] On the other hand, the credits are like debt on the part of the cooperative to repay the face amount of the credits. The bylaws provide that the board of directors *shall* begin to revolve out the credits when the amount of all outstanding unpaid revolving fund credits equals $10 million.

Because of the twofold character of ELPC's revolving fund credits, we find them to be susceptible to classification as either evidences of indebtedness or the equivalent of stock, encompassed by sections 1232 (a)(1) and 302(a), respectively. It therefore becomes unnecessary for us to determine the definite character of the credits since petitioner will prevail in either event.

It is stipulated that petitioner was not a member or patron of ELPC, that it purchased the credits for value, and that the credits represented capital assets in petitioner's hands. Whether the revolving fund credits are classified as indebtedness or the equivalent of stock, their retirement on the one hand and their redemption on the other are deemed exchanges by statute.

Accordingly, we hold that the amounts received by this petitioner on the revolution of these revolving fund credits are to be considered as amounts received in exchange for such credits and that the gains realized thereon represent long-term capital gains.

To take into account other adjustments disposed of by agreement of the parties,

*Decision will be entered under Rule 50.*

---

[5] See and compare *Massey* v. *Tomlinson*, 308 F. 2d 168 (C.A. 5, 1962).