ATWOOD GRAIN AND SUPPLY CO., AN ILLINOIS CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6098–70. Filed June 12, 1973.

*Raymond Lee, Jr.,* for the petitioner.
*James F. Hanley, Jr.,* for the respondent.

GOFFE, *Judge:* Respondent determined deficiencies in petitioner's Federal income tax as follows:

| TYE June 30— | Deficiency |
|---|---|
| 1964 | $4,043.87 |
| 1965 | 1,266.99 |
| 1966 | 317.90 |
| 1967 | 2,128.38 |
| 1968 | 4,120.96 |

Petitioners have conceded the deficiencies determined for all of the taxable years involved except the taxable year ended June 30, 1965. They have also conceded some adjustments made by the Commissioner to the taxable year ended June 30, 1965.

The sole issue for decision is whether petitioner is entitled to deduct the sum of $5,262.96 as an ordinary loss or as a partially worthless debt, the difference between its basis in cooperative participation certificates and the par value of preferred stock received in exchange therefor.

### FINDINGS OF FACT

All of the facts and exhibits stipulated by the parties are adopted as findings and incorporated by reference.

Petitioner was organized on March 12, 1918, under the provisions of the Cooperative Act of the laws of Illinois. Its principal place of business is Atwood, Ill., and its principal business activity is that of a cooperative, buying grain from farmers, selling it to the grain industry, and selling supplies to farmers. It filed its Federal income tax return for the taxable year ended June 30, 1965, with the district director of internal revenue at Springfield, Ill. Petitioner is not taxable for the taxable year ended June 30, 1965, as a cooperative but instead is taxable as a corporation.

Petitioner was a patron-shareholder of United Grain Co. (United), an Illinois cooperative corporation, through which petitioner marketed grain. From 1952 to 1957, inclusive, United issued to petitioner nine participation certificates aggregating a face value of $9,987.96. The certificates were identical in form as follows except that the certificate issued on December 31, 1952, did not contain the language of the other certificates that such certificate was non-interest-bearing nor did it contain the language of the other certificates that the "certificate represents capital contributed to the revolving fund from patronage dividends and is subordinate and junior to all other indebtedness of the company and the funds represented herein need not be segregated from other capital funds of the company."

U N I T E D   G R A I N   C O M P A N Y

STATEMENT OF
ALLOCATED OWNERSHIP

(Based on Patronage)

PARTICIPATION CERTIFICATE

This certifies that

_____

is the owner of at least one share of common capital stock of no par value (membership share) of United Grain Company and in accordance with and within the limits of the by-laws of United Grain Company is entitled to its share of membership earnings.

and patronage dividends in the amount of $_____ on _____ bushels of all grains and soybeans, and $_____ from Farm Supplies making a total of $_____, the same being based on business done with United Grain Company during the fiscal year ending _____ and that pursuant to action of Board of Directors of United Grain Company, _____ the foregoing amount is being credited to and/or paid to the above named company as follows:

A  $_____ retained net savings allocated on the books of United Grain Company to the within named company is noninterest bearing and is to be distributed to said company at such future date and in such manner as the Board of Directors of United Grain Company may determine.

B  $_____ paid to the within named company in cash.

C  $_____ toward purchases of one share "A" Preferred stock.

This certificate represents capital contributed to the revolving fund from patronage dividends and is subordinate and junior to all other indebtedness of the company and the funds represented herein need not be segregated from other capital funds of the company.

In witness whereof, the company has caused this certificate to be signed by its duly authorized officers.

Dated at Champaign, Illinois, this _____
retroactive to beginning of fiscal year, _____

UNITED GRAIN COMPANY
(Co-operative of Illinois)

_____ President
_____ Secretary

Petitioner reported as income on its Federal income tax returns the face amounts of the certificates in the taxable years such certificates were received. In 1959 the Federal Income Tax Regulations were amended to provide that taxpayers who, in prior taxable years, reported as income patronage dividends having no fair market value, could, at the taxpayer's option, amend their returns to exclude the patronage dividends from income. Petitioner did not so amend its returns for the taxable years ended June 30, 1952, through June 30, 1957. The $9,678.41 in United participation certificates owned by petitioner

on November 30, 1957, were part of the total of $494,164.24 reflected on the balance sheet of United dated November 30, 1957, as a liability under the heading "Retained Allocated Ownership: Patronage Refunds Retained."

Shortly after May 31, 1964, officers of United and officers of Illinois Grain Corp. prepared a "Study of and Proposal for Merger of Illinois Grain Corp. and United Grain Company." Illinois Grain Corp. was a grain cooperative organized under the laws of Illinois. For convenience it will hereinafter be referred to as Old Illinois. The feasibility study covered numerous economic aspects of the proposed merger and assumed, for purposes of the study, that all stock would be exchanged at par value. The study contained no statement as to the proposed treatment of patronage allocations nor did it contain any statement as to the outstanding participation certificates of United.

On June 18, 1964, petitioner was advised by letter from United that the boards of directors of United and Old Illinois had approved a merger of the two corporations. The letter solicited proxies in favor of the merger. It also informed petitioner that outstanding stock of the two corporations would be exchanged for like par value amounts of stock in the surviving corporation and that the allocation of surplus would remain unchanged. The merger contemplated creation of a new corporation under the laws of Delaware into which the existing corporations would be merged because a Delaware corporation could be organized for perpetual existence whereas the corporate existence of an Illinois cooperative was limited to 50 years. Neither the letter nor the notice of the special meeting of shareholders accompanying the letter referred to outstanding participation certificates issued by United.

On July 31, 1964, United and Old Illinois were merged into a new corporation organized under the laws of Delaware, New Illinois Grain Corp., hereinafter for convenience referred to as New Illinois. The name of New Illinois was changed to Illinois Grain Corp. pursuant to the articles of merger.

The articles of merger executed by United, Old Illinois, and New Illinois on July 24, 1964, provided in part as follows:

### ARTICLE II

2. New Corp. shall thereupon and thereafter possess all the rights, privileges, immunities and franchises, as well of a public as of a private nature, of each of the Constituent Corporations; and all property, real, personal and mixed, and all debts due on whatever account, including subscriptions to shares, and all other choses in action, and all and every other interest of, or belonging to, or due to each of the Constituent Corporations, shall be taken and deemed to be vested in

the Surviving Corporation without further act or deed; and the title to all real estate, or any interest therein vested in either of the Constituent Corporations shall not revert or be in any way impaired by reason of the merger;

     \*         \*         \*         \*         \*         \*         \*

### ARTICLE VIII

The surplus funds or membership equities of Illinois and United as the same are now allocated to the respective members of Illinois and United, shall remain so allocated in the surviving corporation and in the event of any distribution of such surplus funds or membership equities the same shall be made on the basis of such allocations.

There was no provision in the articles of merger as to the outstanding participation certificates of United.

The certificate of merger was issued by the secretary of state of the State of Illinois on July 31, 1964. On the same date the board of directors of New Illinois, which was composed of members of the boards of directors of the constituent corporations, held a special meeting and adopted the following resolutions:

WHEREAS, United Grain Company had issued Participation Certificates to its common stock shareholder members evidencing their interest in the earnings of said company for the periods indicated by such certificates, respectively, and it is desired to convert the amount of such certificates or the unimpaired portion thereof to Class "E" Preferred Stock of this corporation, Now, THEREFORE, BE IT

RESOLVED, that the auditors of United Grain Company be requested to determine the amount of such Participation Certificates outstanding as of July 31, 1964, or the unimpaired portion thereof, and

FURTHER RESOLVED, that this corporation issue its Class "E" Preferred Stock of the par value of $25 per share, at par, to the holders of such Participation Certificates for the amount thereof, or the unimpaired portion thereof, said certificates to be dated as of August 1, 1964, and to be issued only for full shares, the fractional amount of any such share to which any member would be entitled to be credited to a stock subscription account upon the books of this corporation.

Pursuant to the above-quoted resolutions, New Illinois issued to petitioner on August 1, 1964, a certificate for 189 shares of class E preferred stock having a par value of $4,725. The following provisions were printed on the stock certificate:

The holders of Class "E" Preferred Stock shall be entitled to no dividends and shall be subject to the rights of the holders of the Class "A" Preferred Stock, Class "B" Preferred Stock, Class "C" Preferred Stock and Class "D" Preferred Stock, but shall have preferential rights upon liquidation in the distribution of assets as against the holders of Common Stock. No dividends, as such, shall be paid upon the Common Stock of the Corporation. Whenever full dividends upon all classes of Preferred Stock at the respective rates hereinabove specified, shall have been paid or declared and a sum sufficient for the payment thereof set apart in any year, all remaining earnings of the corporation for such year, after setting aside such reserves and surplus funds as may be determined by the Board of Directors, shall be distributed and paid in cash, evidence of indebtedness, prop-

erty or shares of stock of any class of the corporation to the holders of Common Stock upon the basis of patronage in such equitable manner and upon such proper classification of commodities and services as may be determined by the Board of Directors.

The amounts carried in reserves or surplus from business done in any year shall be allocated on the books of the corporation on a patronage basis for that year or in lieu thereof the books and records of the corporation shall afford a means of doing so at any time. Should distribution of such reserves or surplus be made at any time, the corporation shall return to each holder of Common Stock, its share on a patronage basis.

*     *     *     *     *     *     *

The corporation may and it hereby reserves the right to purchase, redeem, retire and cancel any and all of the then outstanding Class "A" Preferred Stock, Class "C" Preferred Stock, Class "D" Preferred Stock or Class "E" Preferred Stock of the corporation at any time after one year from the date of issue, in such amounts and from time to time as the Board of Directors may determine, by paying the respective holders of such stock so redeemed, retired and cancelled a sum equal to the par value of such stock so redeemed, retired and cancelled, together, in the case of Class "A" Preferred Stock, Class "C" Preferred Stock or Class "D" Preferred Stock, with any declared and unpaid dividends thereon.

At the time of the merger the "retained savings" which United had allocated to its patrons and excluded from its income aggregated $492,500.97, which had accumulated from 1952 through 1957. The unallocated "retained savings" was a deficit of $261,770.33, resulting from operating losses and dividends paid during the years 1958 to 1964. The net "retained savings" at the date of the merger was, therefore, $230,730.64.

During the negotiations leading up to the merger the parties discussed the effect of the deficit on the allocated "retained savings" and what steps, if any, could be taken to insure that reductions in the accumulated deficit would inure to the benefit of the holders of the participation certificates, but no agreement as to the general or specific remedy was reached prior to the merger.

The balance sheet of United, at the date of the merger, reflected under "other assets" patronage allocations composed of stock or equity certificates in other cooperatives in the amount of $292,977.68 offset by a reserve of like amount established because such assets had an indeterminate fair market value. Of this amount $52,977.71 had been previously included in the taxable income of United. Pursuant to the merger these assets were transferred to New Illinois at a zero value. New Illinois has received, since the date of the merger, approximately $105,000 in redemptions attributable to these assets and such funds could be distributed to petitioner and others holding class E preferred stock who had held participation certificates of United if the board of directors of New Illinois chose to do so.

On August 2, 1965, New Illinois mailed the following letter to petitioner and other holders of class E preferred stock:

AUGUST 2, 1965

To: HOLDERS OF PARTICIPATION CERTIFICATES
     *United Grain Company*

GENTLEMEN:

This letter is in answer to a number of inquiries which have been received concerning the Class "E" Preferred Stock of Illinois Grain Corporation issued or to be issued, in exchange for the unimpaired value of Participation Certificates formerly issued by United Grain Company.

In the merger negotiations it was felt by the United Grain representatives that there was an unbalance as between shareholders of Illinois Grain Corporation and shareholders of United Grain Company because Illinois Grain Corporation had issued patronage largely in Class "E" stock with voting rights, whereas United Grain had used a large number of Certificates of Participation which conferred no voting rights. Actually these certificates were merely a notice of an allocation that had no maturity date, bore no interest and were payable only if and when authorized by the Board of Directors. The certificates, therefore, were merely a notification of allocation of surplus to the members of United Grain Company.

United Grain Company had sustained losses in certain years prior to the merger which of necessity had to be charged against the surplus of the company. The effect of this was to reduce the value of the outstanding Participation Certificates. In the merger negotiations the representatives of Illinois Grain Corporation were quite willing to issue Class "E" Preferred Stock in exchange for Participation Certificates but under the law, the Class "E" shares could only be issued for the *unimpaired value of the Participation Certificates*. This impairment at the time of merger was a little more than 50% of the value of the certificates. Therefore, face value of the shares of Class "E" Preferred Stock which have been sent to former members of United Grain Company were in an aggregate of a little less than 50% of the face amount of the Participation Certificates.

There is, however, a possibility of some further recovery of members' equities. At the time of merger certain assets of Illinois Grain Corporation and certain assets of United Grain Company were given practically no value on the books of the two companies. In the case of United Grain in excess of $200,000 of such assets were fully reserved on the books at the time of merger and thus had a zero value. These assets included stock received as patronage dividend from Indiana Grain Cooperative, St. Louis Bank for Cooperatives, and other organizations. It is possible that a portion of these assets will eventually have value. By Board action these values, when realized will be reflected in the membership equities on a patronage basis for the years in which the assets were received. In the case of United members there is a possibility of an eventual realization of perhaps as much as $200,000 which after payment of any income tax due thereon would be allocated on the books of Illinois Grain Corporation to the United members on a patronage basis. The former members of United Grain can thus expect some increase in equities over and above the value of the Class "E" shares that have been distributed.

This will not restore the value of the Participation Certificates which have been exchanged for Class "E" Preferred Stock, but the net effect is substantially the same. In other words, the Participation Certificates are merely written evidence of an interest in surplus which nevertheless exists with or without the certificates.

At the time of merger the auditors of United Grain Company determined that the surplus represented by Participation Certificates had been reduced by reason of losses in the amount of $261,770.33. The total of the Class "E" shares issued, or to be issued, in exchange for the remaining unimpaired value was $230,730.64.

It is hoped that this letter will give a better understanding of the situation to those who have made inquiry.

Yours very truly,

ILLINOIS GRAIN CORPORATION

/s/ Everett E. Glasgow

EVERETT E. GLASGOW

/s/ Arthur Kresin

ARTHUR KRESIN

Petitioner claimed as a deduction on its return for the taxable year ended June 30, 1965, a loss of $5,262.96 by reason of its exchange of the nine participation certificates of United ·having a face value of $9,987.96 for 189 shares of class E preferred stock of New Illinois having a stated (par) value of $4,725.

The Commissioner disallowed such deduction in his statutory notice of deficiency with the explanation that the basis of the stock acquired was considered to have the same basis as the certificates exchanged.

### OPINION

The sole issue is whether the exchange of participation certificates of United for class E preferred stock of New Illinois entitles petitioner to an ordinary-loss deduction or a deduction as a partially worthless debt.

Petitioner contends that the participation certificates constituted debt of United assumed by New Illinois which debt was extinguished by the exchange for class E preferred stock.

Respondent contends that the participation certificates constitute an equity interest in United, that the exchange was pursuant to the plan of merger of United and Old Illinois, and that, therefore, the loss on the exchange is not recognized because the exchange was pursuant to a plan of reorganization. Secs. 354(a)(1) and 358(a)(1), I.R.C.[1]

Petitioner appears to rest its case on the principle that the participation certificates represent income earned by it and reported as taxable income but lent back to United to be used to operate United as a cooperative. The understanding of this theory requires some explanation as to the taxation of cooperatives.

Prior to 1962, the Commissioner of Internal Revenue sought to tax recipients of withholding and revolving fund certificates as having received ordinary income at the time such certificates were issued by the cooperative. Contingent certificates having no cash value when issued

---

[1] All references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

were held not to constitute income at the time they were issued. *B. A. Carpenter*, 20 T.C. 603 (1953), affd. 219 F. 2d 635 (C.A. 5, 1955) ; *Long Poultry Farms* v. *Commissioner*, 249 F. 2d 726 (C.A. 4, 1957), reversing 27 T.C. 985 (1957). Congress, in 1962, extensively revised the taxation of cooperatives but specifically provided that patronage dividends paid prior to 1962 would be taxed without reference to the 1962 Act.[2]

The participation certificates issued to petitioner by United involved here were all issued prior to 1962. The 1962 Act provided that "the tax treatment of gain or loss on the redemption, sale, or other disposition of such written notice of allocation" shall also be made without regard to the newly enacted subchapter of chapter 1.[3] Petitioner points to section 1.61–5 (b) (2), Income Tax Regs., which provides that if the taxpayer has received a retain certificate from a cooperative (which is another term meaning the same as participation certificate) which is redeemed in a subsequent taxable year, the excess of the redemption price over the amount previously reported as income at the time the certificate was received is taxable as ordinary income. Petitioner reasons that because it reported the face amount of the participation certificates as income, the redemption of the certificates for less than the amount of income previously reported causes the antithesis to be true ; i.e., that an ordinary loss is sustained.

We do not conclude that such a result necessarily follows although the simplicity of the line of reasoning is appealing.

The regulations draw distinctions between certificates which have a fair market value at the time they are issued by the cooperative and those which do not. Section 1.61–5 (b) (1) (iii) provides as follows :

For purposes of this subdivision, any document containing an unconditional promise to pay a fixed sum of money on demand or at a fixed or determinable time shall be considered to have a fair market value at the time of its receipt by the patron, unless it is clearly established to the contrary. However, for purposes of this subdivision, any document which is payable only in the discretion of the cooperative association, or which is otherwise subject to conditions beyond the control of the patron, shall be considered not to have any fair market value at the time of its receipt by the patron, unless it is clearly established to the contrary.

A special rule included in the regulations permitted a taxpayer, at his election, who received certificates in a taxable year ending before December 3, 1959, to amend his return to report receipt of the certificates in accordance with the tax treatment accorded them under the provisions of the section quoted above. Sec. 1.61–5 (c), Income Tax

[2] Revenue Act of 1962, sec. 17 (c), Pub. L. 87–834, 87th Cong., 2d Sess., approved Oct. 16, 1962 ; S. Rept. No. 1881, 87th Cong., 2d Sess., p. 322.

[3] Revenue Act of 1962, sec. 17 (c), *supra*.

Regs. Petitioner had reported as ordinary income the face amounts of the participation certificates in the years in which they were received. It did not amend its returns to elect a different treatment. Petitioner reasons that it should, therefore, be permitted to deduct as an ordinary loss the difference between what it reported and what it received upon redemption. We fail to agree. Petitioner's remedy was to amend its returns and claim refunds because the participation certificates had no fair market value under the definition contained in section 1.61–5(b) (1)(iii), Income Tax Regs., quoted above. They did not represent an unconditional promise to pay but instead were redeemable solely at the discretion of the board of directors.

This case then, at this point, turns on whether the participation certificates represent debt of the cooperative as petitioner contends, or represents an equity interest as respondent contends. The classification of the certificate as debt or equity is based primarily upon the terms of instrument itself.

We had occasion to examine the nature of revolving fund credits (for purposes of this case the same as participation certificates), in *Greenvine Corporation*, 40 T.C. 926 (1963), and we observed that such credits had certain characteristics of both debt and equity. It was not necessary in that case to determine which type of interest the credits represented because the disposition of the credits by that particular taxpayer constituted a capital transaction regardless of whether they were classified as debt or equity. See also *Raley* v. *United States*, an unreported case (M.D. Fla. 1972, 31 A.F.T.R. 2d 73–326, 72–2 U.S.T.C. par. 9739).

We have carefully examined the terms of the participation certificates received by petitioner from United and the manner in which they were treated by petitioner, United, Old Illinois, and New Illinois, and conclude that they represent an equity interest rather than debt. Some of the more important indicia which lead us to that conclusion are the following: (1) They were redeemable solely within the discretion of the board of directors and recited no promise to pay; (2) they gave the holders thereof no right to enforce payment as there is no evidence in the record whatever that the certificates imposed on United a legal obligation; (3) they bore no interest; (4) by their own terms they represented capital contributed to the revolving fund from patronage dividends; (5) they were subordinated to indebtedness of United; (6) they were not segregated from other capital funds of United; (7) they had no fixed maturity nor were they, by their terms, payable upon demand; and (8) allocations to the participation

certificates were offset by operating losses showing them to constitute capital subject to the risk of the business. The indicia of equity predominates with certainty. *Joseph Miele,* 56 T.C. 556, 566 (1971), affd. 474 F. 2d 1338 (C.A. 3, 1973) ; *Pasco Packing Association* v. *United States,* an unreported case (S.D. Fla. 1957, 52 A.F.T.R. 1674, 57–2 U.S.T.C. par. 9849) ; *Consumers Credit Rural Electric Cooperative Corp.,* 37 T.C. 136 (1961), reversed on another issue 319 F. 2d 475 (C.A. 6, 1963).

The certificate issued on December 31, 1952, did not contain all the language found on the other certificates upon which we base our conclusions enumerated above. However, that participation certificate was treated no differently than the others involved here, and because we do not rest our conclusion solely on the terms of the certificates which were not contained in the December 31, 1952, certificate, we hold that the certificate issued on December 31, 1952, is likewise evidence of an equity interest.

Having determined as a fact that the participation certificates represented an equity interest in the hands of petitioner, it follows that petitioner is not entitled to claim the partial worthlessness of a debt under section 166(a)(2) upon the exchange of the certificates for class E preferred stock. Petitioner, on its return, claimed an ordinary loss by reason of the redemption of the certificates, not a deduction for partial worthlessness of a debt. Nevertheless, it argues on brief that the participation certificates represented a debt.

Even if we held the participation certificates to be debt instead of equity, we have grave doubt as to whether petitioner has demonstrated their partial worthlessness in the taxable year they were exchanged for the preferred stock. In the August 2, 1965, letter notifying petitioner of the exchange, petitioner was also advised that the appreciation in United assets to be realized in the future would be allocated to membership equities on a patronage basis for the years in which such assets were received and that the members of United could expect to receive some increase in equities in excess of the class E shares which were distributed.

Respondent's position is that the exchange of the participation certificates for the preferred stock was pursuant to a plan of reorganization; i.e., the merger of United and Old Illinois into New Illinois, and, therefore, any loss realized in the exchange is not recognized because of the operation of section 354. Respondent's position must fail because we are unable to find that the class E preferred stock was issued pursuant to a plan of reorganization relating to the merger as required by section 354(a)(1). Sec. 1.354–1(a), Income Tax Regs.

There is no evidence that issuance of the preferred stock was contemplated either in the merger negotiations or in the merger agreement.

In order to include events occurring after a merger in the plan of merger there must be some anticipation of the event in the merger. In *Keiler* v. *Commissioner*, 196 F. 2d 822 (C.A. 7, 1952), reversing on another issue 17 T.C. 216 (1951), the Court of Appeals stated at page 825 of its opinion:

Although it is not essential that a plan of reorganization be in any particular form or in writing, *C. T. Inv. Co.* v. *Commissioner of Internal Revenue*, 8 Cir., 88 F. 2d 582, the statute requires that to be tax-free the exchange of stocks or securities must be in pursuance of a plan of reorganization. Something more than an afterthought is essential. Petitioner has the burden of proving the existence of the plan of reorganization. In order for petitioner to prevail on this issue, the series of transactions hereinbefore set forth must spell out an integrated plan of reorganization and a distribution of securities pursuant to such plan. * * * [Emphasis added.]

In the instant case the possibility of issuing stock in redemption of the participation certificates was not described in the feasibility study of the merger nor was it contained in the articles of merger. The "Plan and Agreement of Merger" referred to in the articles of merger was not introduced into evidence. Presumably, if it had contained a provision for issuance of the class E preferred stock in exchange for the participation certificates, petitioner would have sought to introduce it into evidence. *Wichita Terminal Elevator Co.*, 6 T.C. 1158 (1946), affd. 162 F. 2d 513 (C.A. 10, 1947).

We have held that a certain step will be considered as part of a plan of reorganization if it is "a contemplated possibility under the plan and actually eventuates." *Anheuser-Busch, Inc.*, 40 B.T.A. 1100, 1106 (1939), affd. 115 F. 2d 662 (C.A. 8, 1940), certiorari denied 312 U.S. 699 (1941).

We are not convinced from the evidence herein that the exchange of the participation certificates for the preferred stock was a "contemplated possibility." Respondent's own witness testified that the parties to the reorganization hoped that the holders of the participation certificates would benefit from any appreciation in patronage allocations transferred by United pursuant to the merger. He testified further that various proposals were advanced but did not describe any of the proposals. When asked whether there were any discussions prior to the merger as to a mechanical means for allocating appreciation in the assets to the holders of the participation certificates, he responded: "Well, I believe the first real establishment of what was to be done was really adopted by the [New Illinois] Board of Directors." Nothing in the record refutes his testimony and we believe it to be an accurate description of the situation.

We recognize that the board of directors of New Illinois authorized redemption of the participation certificates by issuance of the class E preferred stock in a board meeting on the date of the merger. Nevertheless, the coincidence of the dates without explanation is not of itself very significant. Nor are we persuaded to hold otherwise by reason of the language of the letter from New Illinois to the holders of the participation certificates almost a full year following the merger, that in the merger negotiations the representatives of Old Illinois were quite willing to issue class E preferred stock in exchange for participation certificates, but that the preferred shares could only be issued for the unimpaired value because of State law. Such a willingness without evidence in the record of agreement by the other party to the reorganization does not suffice as a "contemplated possibility." *Anheuser-Busch, Inc., supra.*

We hold, therefore, that the participation certificates were not exchanged for the class E preferred stock pursuant to the plan of merger of United and Old Illinois.

As we view the series of events leading up to the exchange of the participation certificates for the preferred stock we would be remiss if we did not determine whether the exchange might constitute a nontaxable reorganization under some form other than a statutory merger. Pursuant to the merger of United and New Illinois the membership equities of the patrons of United were carried over to New Illinois; therefore the participation certificates became equity interests in New Illinois.

Based upon all the facts and circumstances involved here we conclude that the exchange of participation certificates for class E preferred stock constituted a nontaxable recapitalization as defined in section 368(a)(1)(E). A recapitalization is a reshuffling of a capital structure within the framework of an existing corporation. *Helvering* v. *Southwest Consolidated Corp.*, 315 U.S. 194 (1942).[4] The tenor of the letter from New Illinois to petitioner on August 2, 1965, clearly demonstrates a plan of recapitalization by New Illinois.

It follows that because the exchange constitutes a nontaxable reorganization as defined in section 368(a)(1)(E) petitioner is not entitled to recognize any loss it realized by reason of the exchange of the participation certificates for the preferred stock. Sec. 354(a)(1).

*Decision will be entered for the respondent.*

---

[4] See also Rev. Rul. 69–216, 1969–1 C.B. 109, and Rev. Rul. 70–298, 1970–1 C.B. 82, wherein the Commissioner recognizes an exchange of cooperative participation certificates for stock to be a recapitalization.